## BLOUNT, POSTMASTER GENERAL, ET AL. *v.* RIZZI, DBA THE MAIL BOX

No. 55. Argued November 10, 1970—Decided January 14, 1971*

---

*Together with No. 58, *United States et al.* v. *The Book Bin,* on appeal from the United States District Court for the Northern District of Georgia.

BRENNAN, J., delivered the opinion of the Court, in which BURGER, C. J., and DOUGLAS, HARLAN, STEWART, WHITE, MARSHALL, and BLACKMUN, JJ., joined. BLACK, J., concurred in the result.

*Peter L. Strauss* argued the cause for appellants in both cases. With him on the brief were *Solicitor General Griswold, Assistant Attorney General Ruckelshaus, Robert V. Zener, Donald L. Horowitz, David Nelson,* and *Charles D. Hawley.*

*Stanley Fleishman* argued the cause for appellee in No. 55. With him on the brief was *Sam Rosenwein, Robert Eugene Smith* argued the cause for appellee in No. 58. With him on the brief was *Hugh W. Gibert.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

No. 55 (hereafter *Mail Box*) draws into question the constitutionality of 39 U. S. C. § 4006 (now 39 U. S. C. § 3006, Postal Reorganization Act,† 84 Stat. 747), under

---

†The codification of the Act will appear in the 1970 edition of the United States Code. This opinion treats the old Code sections as current.

which the Postmaster General, following administrative hearings, may halt use of the mails and of postal money orders for commerce in allegedly obscene materials. No. 58 (hereafter *Book Bin*) also draws into question the constitutionality of § 4006, and, in addition, the constitutionality of 39 U. S. C. § 4007 (now 39 U. S. C. § 3007), 84 Stat. 748, under which the Postmaster General may obtain a court order permitting him to detain the defendant's incoming mail pending the outcome of § 4006 proceedings against him.

39 U. S. C. § 4006 provides in pertinent part:

"Upon evidence satisfactory to the Postmaster General that a person is obtaining or attempting to obtain remittances of money or property of any kind through the mail for an obscene . . . matter . . . , or is depositing or causing to be deposited in the United States mail information as to where, how, or from whom the same may be obtained, the Postmaster General may—

"(1) direct postmasters at the office at which registered letters or other letters or mail arrive, addressed to such a person or to his representative, to return the registered letters or other letters or mail to the sender marked 'Unlawful'; and

"(2) forbid the payment by a postmaster to such a person or his representative of any money order or postal note drawn to the order of either and provide for the return to the remitters of the sums named in the money orders or postal notes."

Proceedings under § 4006 are conducted according to departmental regulations. A proceeding is begun by the General Counsel of the Post Office Department by written complaint and notice of hearing. 39 CFR §§ 952.5, 952.7, 952.8. The Judicial Officer of the Department holds a trial-type hearing at which a full record is transcribed. He renders an opinion which includes findings

of fact and a statement of reasons. 39 CFR §§ 952.9–952.25. The decision is to "be rendered with all due speed," 39 CFR § 952.24 (a), and there is an administrative appeal. 39 CFR § 952.25. No § 4006 order may issue against the defendant until completion of the administrative proceeding. If, however, the Postmaster General wishes to detain the defendant's incoming mail before the termination of the § 4006 proceedings, he may apply to the United States District Court for the district in which the defendant resides, under 39 U. S. C. § 4007, which in pertinent part provides: [1]

> "In preparation for or during the pendency of proceedings under [§ 4006] of this title, the United

---

[1] Section 4006 was enacted in 1950. 64 Stat. 451. In 1956 the Postmaster General sought and obtained the power himself to enter an order, pending administrative proceedings under § 4006, that all mail addressed to the defendant in the § 4006 proceeding be impounded. The order was to expire at the end of 20 days unless the Postmaster General sought in a federal district court, an order continuing the impounding. 70 Stat. 699. In 1959, extensive hearings were held in the House on the Post Office's request that the 20-day period be extended to 45 days, and that the standard of necessity be changed to "public interest." Hearings on Obscene Matter Sent Through the Mail before the Subcommittee on Postal Operations of the House Committee on Post Office and Civil Service, 86th Cong., 1st Sess., pts. 1, 2, and 3 (1959); Hearings on Detention of Mail for Temporary Periods before the House Committee on Post Office and Civil Service, 86th Cong., 1st Sess. (1959). Instead, Congress enacted § 4007 which stripped the Postmaster General of his power to issue an interim order for any period, and directed him to seek such an order in a federal district court. One Senate Report expressed misgivings when the Postmaster General had originally sought the impounding power: "The committee recognizes that even in its present form the bill gives the Postmaster General extraordinary and summary powers to impose a substantial penalty by impounding a person's mail for up to 20 days in advance of any hearing or any review by the courts. Such power is directly contrary to the letter and spirit of normal due process, as exemplified by the Administrative Procedure Act, which requires a hearing before any penalty may be imposed. The Post Office Department has made

States district court in the district in which the
defendant receives his mail shall, upon application
therefor by the Postmaster General and upon a
showing of probable cause to believe the statute is
being violated, enter a temporary restraining order
and preliminary injunction pursuant to rule 65 of
the Federal Rules of Civil Procedure directing the
detention of the defendant's incoming mail by the
postmaster pending the conclusion of the statutory
proceedings and any appeal therefrom. .The district
court may provide in the order that the detained
mail be open to examination by the defendant. and
such mail be delivered as is clearly not connected
with the alleged unlawful activity. An action taken
by a court hereunder does not affect or determine
any fact at issue in the statutory proceedings." [2]

---

its case for this legislation on the grounds that a temporary and sum-
mary procedure is required to deal with fly-by-night operators using
the mails to defraud or to peddle pornography, who may go out of
business—or change the name of their business or their business
address—before normal legal procedures can be brought into opera-
tion. The Post Office Department has not recommended, nor does
this committee approve, the use of the temporary impounding pro-
cedure under this bill as a substitute for the normal practice of an
advance hearing or the bringing of an indictment for violation of
the criminal code in all cases involving legitimate and well-established
business operations. The committee would not approve the use of
the extraordinary summary procedure under the bill against legiti-
mate publishers of newspapers, magazines, or books in cases in which
a Postmaster General might take objection to an article, an issue, or
a volume." S. Rep. No. 2234, 84th Cong., 2d Sess., 2–3 (1956).

[2] Section 4007 also authorizes the Postmaster General to apply for
an impounding order during the pendency of proceedings under 39
U. S. C. § 4005 (1964 ed., Supp. V), now § 3005. Section 4005, as
amended (82 Stat. 1153), permits the return to the sender of any
mail sent to the perpetrator of what the Postmaster General finds to
be a scheme for obtaining money by means of false representations.
That section has been upheld against First Amendment attack.
*Donaldson* v. *Read Magazine,* 333 U. S. 178 (1948). The Govern-

In *Mail Box,* the Postmaster General began administrative proceedings under § 4006 on November 1, 1968. The administrative hearing was concluded December 5, 1968. The Judicial Officer filed his decision December 31, 1968, finding that the specified magazines were obscene and, therefore, entered a § 4006 order—61 days after the complaint was filed. Mail Box filed a complaint in the United States District Court for the Central District of California seeking a declaratory judgment that § 4006 was unconstitutional and an injunction against enforcement of the administrative order. A three-judge court was convened and held that 39 U. S. C. § 4006 "is unconstitutional on its face, because it fails to meet the requirements of Freedman v. Maryland (1965) 380 U. S. 51 . . . ." 305 F. Supp. 634, 635 (1969). The court, therefore, vacated the administrative order, directed the delivery "forthwith" of all mail addressed to Mail Box, and enjoined any proceedings to enforce § 4006.

In *Book Bin,* the Postmaster General applied to the District Court for the Northern District of Georgia for a § 4007 order pending the completion of § 4006 proceedings against Book Bin.[3] Book Bin counterclaimed, asserting that both §§ 4006 and 4007 were unconstitutional and that their enforcement should be enjoined. A three-judge court was convened and held both sections unconstitutional. It agreed with the three-judge court in *Mail Box* that the procedures of § 4006 were fatally deficient under *Freedman* v. *Maryland,* 380 U. S. 51.

---

ment does not argue in its brief that *Donaldson* compels the conclusion that § 4006 also is constitutional but only that "Section 4006, like the fraud statute upheld in *Donaldson* . . . meets all necessary constitutional standards." Brief for Appellants 20. On oral argument, the Government suggested that an affirmance in this case might jeopardize the validity of § 4005 and the continued vitality of *Donaldson.* But no argument was offered to support the suggestion.

[3] The order was sought with respect to a single issue of one

(1965), and also held that the finding under § 4007 merely of "probable cause" to believe material was obscene was not a constitutionally sufficient standard to support a temporary mail detention order. 306 F. Supp. 1023 (1969).

We noted probable jurisdiction of the Government's appeals. 397 U. S. 959, 960 (1970). We affirm the judgment in each case.

Our discussion appropriately begins with Mr. Justice Holmes' frequently quoted admonition that, "The United States may give up the Post Office when it sees fit, but while it carries it on the use of the mails is almost as much a part of free speech as the right to use our tongues . . . ." *Milwaukee Social Democratic Pub. Co.* v. *Burleson,* 255 U. S. 407, 437 (1921) (dissenting opinion); see also *Lamont* v. *Postmaster General,* 381 U. S. 301 (1965). Since § 4006 on its face, and § 4007 as applied, are procedures designed to deny use of the mails to commercial distributors of obscene literature, those procedures violate the First Amendment unless they include built-in safeguards against curtailment of constitutionally protected expression, for Government "is not free to adopt whatever procedures it pleases for dealing with obscenity . . . without regard to the possible consequences for constitutionally protected speech." *Marcus* v. *Search Warrant,* 367 U. S. 717, 731 (1961). Rather, the First Amendment requires that procedures be incorporated that "ensure against the curtailment of constitutionally protected expression, which is often separated from obscenity only by a dim and uncertain line. . . . Our insistence that regulations of obscenity scrupulously embody the most rigorous procedural safeguards . . . is . . ; but a special instance of the larger principle that the freedoms of expression must be ringed about with adequate bulwarks. . . ." *Bantam Books,*

*Inc.* v. *Sullivan*, 372 U. S. 58, 66 (1963). Since we have recognized that "the line between speech unconditionally guaranteed and speech which may legitimately be regulated . . . is finely drawn. . . . [t]he separation of legitimate from illegitimate speech calls for . . . sensitive tools . . . ." *Speiser* v. *Randall*, 357 U. S. 513, 525 (1958).

The procedure established by § 4006 and the implementing regulations omit those "sensitive tools" essential to satisfy the requirements of the First Amendment. The three-judge courts correctly held in these cases that our decision in *Freedman* v. *Maryland*, 380 U. S. 51 (1965) compels this conclusion. We there considered the constitutionality of a motion picture censorship procedure administered by a State Board of Censors. We held that to avoid constitutional infirmity a scheme of administrative censorship must: place the burdens of initiating judicial review and of proving that the material is unprotected expression on the censor; require "prompt judicial review"—a final judicial determination on the merits within a specified, brief period—to prevent the administrative decision of the censor from achieving an effect of finality; and limit to preservation of the status quo for the shortest, fixed period compatible with sound judicial resolution, any restraint imposed in advance of the final judicial determination. 380 U. S., at 58–60.

These safeguards are lacking in the administrative censorship scheme created by §§ 4006, 4007, and the regulations.[4]

The scheme has no statutory provision requiring governmentally initiated judicial participation in the pro-

---

[4] We therefore have no occasion to consider the argument of appellees that *Stanley* v. *Georgia*, 394 U. S. 557 (1969), presupposes that an individual has a constitutional right to obtain possession of the challenged materials by delivery through the mail.

cedure which bars the magazines from the mails, or even any provision assuring prompt judicial review. The scheme does differ from the Maryland scheme involved in *Freedman* in that under the Maryland scheme the motion picture could not be exhibited pending conclusion of the administrative hearing, whereas under § 4006 the order to return mail or to refuse to pay money orders is not imposed until there has been an administrative determination that the magazines are obscene. This, however, does not redress the fatal flaw of the procedure in failing to require that the Postmaster General seek to obtain a prompt judicial determination of the obscenity of the material; rather, once the administrative proceedings disapprove the magazines the distributor "must assume the burden of instituting judicial proceedings and of persuading the courts that the . . . [magazines are] protected expression." 380 U. S., at 59–60. The First Amendment demands that the Government must assume this burden. "The teaching of our cases is that, because only a judicial determination in an adversary proceeding ensures the necessary sensitivity to freedom of expression, only a procedure requiring a judicial determination suffices to impose a valid final restraint." 380 U. S., at 58.[5]

Moreover, once a § 4006 administrative order has been entered against the distributor, there being no provision for judicial review, the Postmaster may stamp as "Unlawful" and immediately return to the sender orders for

---

[5] In 1962, three Justices of the Court stated: "[We have] . . . no doubt that Congress could constitutionally authorize a noncriminal process in the nature of a judicial proceeding under closely defined procedural safeguards. But the suggestion that Congress may constitutionally authorize any process other than a fully judicial one immediately raises the gravest doubts." *Manual Enterprises* v. *Day*, 370 U. S. 478, 518–519 (1962) (opinion of BRENNAN, J.).

purchase of the magazines addressed to the distributor, and prohibit the payment of postal money orders to him. Such a scheme "presents peculiar dangers to constitutionally protected speech. . . . Because the censor's business is to censor, there inheres the danger that he may well be less responsive than a court—part of an independent branch of government—to the constitutionally protected interests in free expression. And if it is made unduly onerous, by reason of delay or otherwise, to seek judicial review, the censor's determination may in practice be final." 380 U. S., at 57–58.[6] Appellants suggest that we avoid the constitutional question raised by the failure of § 4006 to provide that the Government seek a prompt judicial determination by construing that section to deny the administrative order any effect whatever, if judicial review is sought by the distributor, until the completion of that review. Apart from the fact that this suggestion neither requires that the appellants initiate judicial proceedings, nor provides for a prompt judicial determination, it is for Congress, not this Court, to rewrite the statute.

The authority of the Postmaster General under § 4007 to apply to a district court for an order directing the detention of the distributor's incoming mail pending the conclusion of the § 4006 administrative proceedings and any appeal therefrom plainly does not remedy the defects in § 4006. That section does not provide a prompt proceeding for a judicial adjudication of the challenged ob-

---

[6] The Judicial Officer is appointed by the Postmaster General to "perform such quasi-judicial duties as the Postmaster General may designate." 39 U. S. C. § 308a. He functions as hearing examiner in many proceedings in addition to those under § 4006. The appellants argue that the Judicial Officer enjoys "many of the insulations that judges enjoy." What the Constitution requires, however, is that a noncriminal censoring process require governmentally initiated full judicial participation. Clearly, § 4006 does not so provide.

scenity of the magazine.[7]  First, it is entirely discretionary with the Attorney General whether to institute a § 4007 action and, therefore, the section does not satisfy the requirement that the appellants assume the burden of seeking a judicial determination of the alleged obscenity of the magazines.  Second, the district court is required to grant the relief sought by the Postmaster General upon a showing merely of "probable cause" to believe § 4006 is being violated.  We agree with the three-judge court in *Book Bin* that to satisfy the demand of the First Amendment "it is vital that prompt judicial review on the issue of obscenity—rather than merely probable cause—be assured on the Government's initiative before the severe restrictions in §§ 4006, 4007, are invoked." 306 F. Supp., at 1028.  Indeed, the statute expressly provides that, "An action taken by a court hereunder does not affect or determine any fact at issue in the statutory proceedings." [8]

---

[7] The Court said in *Freedman* v. *Maryland* that the procedure considered in *Kingsley Books, Inc.* v. *Brown,* 354 U. S. 436 (1957), provides "a model . . . [of an] . . . injunctive procedure designed to prevent the sale of obscene books." 380 U. S., at 60.

[8] This provision was added at the request of Postmaster General Summerfield who desired it expressly to forestall judicial review pending completion of the administrative proceeding.  "This would guarantee that counsel for a mailer will not be able to raise successfully a bar to all further administrative proceedings in a case in which the Government failed to prevail on its motion for a preliminary injunction."  Letter from Arthur E. Summerfield, Postmaster General, to Senator Olin D. Johnston, Chairman, Senate Committee on Post Office and Civil Service, U. S. Code Cong. & Admin. News, 86th Cong., 2d Sess., 3249 (1960).  In 1959, Postmaster General Summerfield had testified:

"In spite of the frustrations and the legal complications, and even the court decisions [which the Postmaster General had described as handing down 'the very broad definition of obscenity']; I feel a responsibility to the public to attempt to prevent the use of the mails for indecent material, and to seek indictments and prosecutions for

Moreover, § 4007 does not in any event itself meet the requisites of the First Amendment. Any order issued by the district court remains in effect "pending the conclusion of the statutory proceedings and any appeal therefrom." [9] Thus, the statute not only fails to provide that the district court should make a final judicial determination of the question of obscenity, expressly giving that authority to the Judicial Officer, but it fails to provide that "[a]ny restraint imposed in advance of a final judicial determination on the merits must . . . be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolution." 380 U. S., at 59.

The appellees here not only were not afforded "prompt judicial review" but they "can only get full judicial review on the question of obscenity—by which the Postmaster would be actually bound—after lengthy administrative proceedings, and then only by [their] own initiative. During the interim, the prolonged threat of an adverse

---

such offenses, even though it may be argued that it falls in the category of material concerning which there have been previous rulings favorable to the promoters." Hearing on Obscene Matter Sent Through the Mail before the Subcommittee on Postal Operations of the House Committee on Post Office and Civil Service, 86th Cong., 1st Sess., pt. 1, p. 6 (1959).

[9] Appellants point out that orders under §§ 4006 and 4007 generally allow the addressee to open his mail at the post office and receive any first class mail demonstrated clearly not to be connected with the allegedly unlawful use. This provision is provided in light of 39 U. S. C. § 4057 which provides that "[o]nly an employee opening dead mail by authority of the Postmaster General, or a person holding a search warrant authorized by law may open any letter or parcel of the first class which is in the custody of the Department." See also 39 CFR § 117.1. But, query whether such provision of the order requires an "official act," viz., examining the mail, which constitutes an unconstitutional limitation on the addressee's First Amendment rights. Lamont v. Postmaster General, 381 U. S. 301 (1965).

administrat[ive] decision in § 4006 or the reality of a sweeping § 4007 order, will have a severe restriction on the exercise of [appellees'] First Amendment rights—all without a *final* judicial determination of obscenity." 306 F. Supp., at 1028.

The judgments of the three-judge courts in Nos. 55 and 58 are

*Affirmed.*

MR. JUSTICE BLACK concurs in the result.