George PETO, Jr., d/b/a Loop Carry Out, Plaintiff,

v.

Donald D. COOK, Director, Dept. of Liquor Control, State of Ohio, et al., Defendants.

Civ. A. No. 70–57.

United States District Court,
S. D. Ohio, E. D.

Dec. 6, 1971.

Laurence E. Sturtz, Columbus, Ohio, for plaintiff.

John A. Connor, II, Asst. Atty. Gen. of Ohio, for defendant.

Before PECK, Circuit Judge, and KINNEARY and RUBIN, District Judges.

## OPINION

CARL B. RUBIN, District Judge.

Plaintiff, George Peto, Jr., d/b/a Loop Carry Out, seeks a declaration that Section 4301.03(B), Ohio Revised Code, and Regulation LCC–1–52 promulgated thereunder are unconstitutional when employed to confiscate allegedly obscene materials located on plaintiff's premises which are licensed by defendant Department.

The jurisdiction of this Court was properly invoked under Title 28, United States Code, Section 1342, and Title 42, United States Code, Section 1983 and 28 U.S.C. § 2284.

This three judge court was designated pursuant to the determination that the requisites for the convening of such a

court were present on the face of the complaint.

This action is now before the Court for decision following a hearing on the merits.

On December 19, 1969, Liquor Control agents of the Department of Liquor Control, State of Ohio, entered onto the premises of plaintiff, a holder of a C–2 liquor permit, and, claiming them to be obscene, seized a substantial number of magazines and removed them from the premises.[1]

General authority to promulgate regulations has been granted the Department of Liquor Control by O.R.C. § 4301.03.[2] In accordance with such power, the Department has issued Regulation LCC–1–52.[3] The significant portion of this regulation reads: "No permit holder . . . shall knowingly or willfully allow in . . . his . . . premises . . . any indecent, profane or obscene . . . literature, pictures, or advertising mate-

---

1. C–2 permits are issued in accordance with Title 43 of the Revised Code of Ohio. They are defined by O.R.C. § 4303.12, which provides as follows:

 Permit C–2 may be issued to the owner or operator of a retail store to sell ale, stout, and all other malt liquors containing more than three and two-tenths per cent of alcohol by weight and not more than seven per cent of alcohol by weight, and to sell wine in sealed containers only and not for consumption on the premises where sold in original containers having a capacity of not more than three and seven-eighths gallons. The holder of such permit may also sell and distribute in original packages containing not less than one container, in total quantities at each sale of not more than ninety-six fluid ounces, and not for consumption on the premises where sold, prepared and bottled highballs, cocktails, cordials, and other mixed beverages manufactured and distributed by holders of A–4 and B–4 permits, and containing not less than seven per cent of alcohol by weight, and not more than twenty-one per cent of alcohol by volume. The fee for this permit is fifty dollars for each location.

2. O.R.C. § 4301.03 provides that:

 The liquor control commission may adopt and promulgate, repeal, rescind, and amend, in the manner required by this sec-

tion, rules, regulations, standards, requirements, and orders necessary to carry out Chapters 4301. and 4303. of the Revised Code . . . The rules and regulations of the liquor control commission may include the following:

 (B) Rules, regulations, and orders providing in detail for the conduct of any retail business authorized under permits issued pursuant to such chapters, with a view to insuring compliance with such chapters and laws relative thereto, and the maintenance of *public decency, sobriety, and good order in any place licensed under such permits*; [emphasis added]

3. Regulation LCC–1–52, as promulgated by the Department of Liquor Control, provides that:

 No permit holder, his agent or employee, shall knowingly or willfully allow in, upon or about his license premises improper conduct of any kind, type or character; any improper disturbances; lewd, immoral activities or brawls; or any indecent, profane, or obscene language, songs, entertainment, literature, pictures, or advertising materials; nor shall any entainment consisting of the spoken language or songs which can or may convey either directly or by implication an immoral meaning be permitted in, upon or about the permit premises.

rials . . ." Defendant relies upon this regulation as authority for the seizure. Return of the magazines was made in late 1971 and the alleged violations dismissed.

■ In light of several recent Supreme Court decisions, we do not believe it necessary to abstain from deciding the important federal constitutional questions which are here presented. See, Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); Askew v. Hargrave, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971); Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

We do not feel that a review of the vast legal literature on the definition of obscenity is warranted by this case. We address ourselves only to the manner in which the Department of Liquor Control exercises a form of restraint upon the sale of alleged obscene material under the guise of enforcing LCC–1–52. The basic legal issue appears to this Court to be: May the Department of Liquor Control, through its duly authorized employees and without any prior judicial determination, declare literature to be obscene, seize it from a licensed liquor outlet and attempt to punish its owner, a licensee of the Department, with suspension or revocation of his license for a violation of LCC–1–52?

■ Defense counsel urged at the oral argument and again in his brief that the return of the seized property to plaintiff and the dismissal of the charge pending against him should terminate this matter. We do not agree. The defendant has conceded in its brief the dubious propriety of the mass seizure of plaintiff's magazine stock and the questionable nature of this "enforcement" confiscation. (See, Defendant's Supplemental Memorandum Contra Petitioner's Complaint, pp. 2–3) In addition the parties are not in agreement over the value of the property seized and as we deem plaintiff's complaint to include a prayer for monetary damage (Plaintiff's Complaint, Prayer, ¶ 5, p. 5) dismissal on grounds of alleged mootness is inappropriate.

Furthermore, the defendant has not conceded that it is without authority under LCC–1–52 to make further seizures of this sort in the future. (See, Defendant's Supplemental Memorandum Contra, p. 2) The basic position, therefore, of defendant Department will not be affected by its *a posteriori* disposition in this case. If its actions were improper *ab initio*, only a Court determination can protect future parties against a repetition.

■ The techniques as adopted by defendant and as employed by it in this case constitute an unwarranted interference with the property and First Amendment rights of plaintiff permit holder. This is not the situation of a seizure of material that may or may not meet specific standards, for the Department has not enunciated any standards. It is, instead, a seizure of material based solely on the personal predilections of the liquor control agents. Since there has been no judicial determination that the materials seized are in fact legally obscene, the seizure constitutes a prior restraint on the constitutional rights of plaintiff and is therefore constitutionally infirm. See, Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931); New York Times Co. v. United States, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971). As the Supreme Court noted in Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963) and reiterated in *New York Times, supra*: "Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity." 403 U.S. at p. 714, 91 S.Ct. at p. 2141. The Liquor Department in this case has not met its "heavy burden," of rebutting that presumption (*Id.* p. 714, 91 S.Ct. 2140).

With all the difficulty the Supreme Court has experienced in defining the

limits of constitutionally protected speech as contrasted with constitutionally unprotected obscenity, one marvels at the apparent ease with which the agents reached their conclusion in this case. The decision to seize the materials, unaided as it was by any judicial authority, is alone sufficient, in this Court's opinion, to void said seizure. However, a second and greater vice is present in this case, for it appears that the permit holder was not provided any means of redress or manner by which he could obtain judicial interpretation prior to the Department ordered seizure.

This latter failure is directly contrary to the standards developed by the Supreme Court during the last decade in its attempt to define an acceptable method of prior restraint in cases involving the frequently indistinct and blurry line between protected forms of expression and obscenity.

In Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), for example, the Supreme Court set forth standards to govern the censorship of films. Three criteria were established in that case, namely: 1) the burden of proving that a film is unprotected expression must rest on the censor; 2) any restrant prior to judicial review must be limited to the preservation of the status quo and to *the shortest period compatible with sound judicial procedure* pending, 3) *a prompt final judicial determination of obscenity* which must be assured.

The procedures adopted by the Department of Liquor Control in the case before us do not meet any of the above mandated standards. The burden of proof has not been placed on the censor but rather falls on the permit holder. The restraint on speech does not preserve the status quo and is open ended. There is no provision for a prompt and final judicial determination of whether the material seized is, in fact, obscene.

Indeed, the Department has never intended to guarantee these safeguards.

We note that the seizure of the materials occurred in December, 1969. The Department has failed to this day to invoke the jurisdiction of a court for the purpose of making the determination of legal obscenity.

The fact that the scheme under which the Department operates provides for no judicial determination of obscenity must surely be fatal to its position. Even in those cases where the statutory scheme provides for the intercession of a court, federal courts will inquire behind the procedure to see whether due process has been afforded. In Marcus v. Search Warrant, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961), the Supreme Court invalidated a Missouri procedure whereby state judges issued warrants for the confiscation of plaintiff's property, which was alleged to be obscene, following an ex parte hearing at which no attempt was made to define the nature of the "obscene" material. The Supreme Court ruled that this procedure was constitutionally insufficient, holding:

. . . a State is not free to adopt whatever procedures it pleases for dealing with obscenity as here involved without regard to the possible consequences for constitutionally protected speech. . . .

We believe that Missouri's procedures as applied in this case lacked the safeguards which due process demands to assure nonobscene material the protection to which it is entitled . . . The fact that only one-third of the publications seized were finally condemned strengthens the conclusion that discretion to seize allegedly obscene materials cannot be confided to law enforcement officials without greater safeguards than were here operative. *Procedures which sweep so broadly and with so little discrimination are obviously deficient in techniques required by the Due Process Clause of the Fourteenth Amendment to prevent erosion of the constitutional guarantees.* [emphasis supplied] 367 U.S. at pp. 731–733, 81 S.Ct. at p. 1716.

If procedures which provide for some peripheral but incomplete contact with judicial process, as in *Marcus, supra*, are insufficient in terms of the procedural due process clause of the Fourteenth Amendment, then the procedures in the case at bar, which totally lacked any provision for judicial consideration at any stage, must be struck down as *per se* violative of the Fourteenth Amendment and therefore unconstitutional. See, *accord*, Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959); Speiser v. Randall, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958); Bantam Books, Inc. v. Sullivan, *supra*; LaRue et al. v. California et al., 326 F.Supp. 348 (C.D.Cal.1971)˙ (three-judge court per Ferguson, U.S.D.J.)[4]

In the recent decision in Blount v. Rizzi, 400 U.S. 410, 91 S.Ct. 423, 27 L.Ed.2d 498 (1971), the Court affirmed the standards set down in Freedman v. Maryland, *supra*. In *Blount, supra,* the Court affirmed the decision of a three-judge district court which had held unconstitutional an administrative procedure of the United States Post Office which sought to identify and then not process mail deemed to be "obscene." Although the Court restated all three of the criteria of Freedman as being constitutionally mandated, the actual holding in *Blount* rested on a constitutional burden principle, since re-enunciated in *New York Times, supra*, 403 U.S. 714, 91 S.Ct. 2140, 29 L.Ed.2d 822. The Court held in *Blount* that " . . . the fatal flaw of [the Post Office Department's] procedure [is] in failing to require that the Postmaster General seek to obtain a prompt judicial determination of the obscenity of the material; rather . . . the distributor 'must assume the burden of instituting judicial proceedings and of persuading the courts that the . . . [magazines are] protected expression.'

380 U.S. at 59–60, [85 S.Ct. 739]. The First Amendment demands that the Government must assume this burden." *Id.* 400 U.S. p. 418, 91 S.Ct. p. 429.

This Court finds that the procedures adopted by the Department contained fatal flaws similar to those present in *Blount, supra*. In truth, the procedures adopted by the Department of Liquor Control remind us of the quotation in *Alice in Wonderland* where a character declaims: "I'll be judge, I'll be jury, Said cunning old Fury; I'll try the whole cause, and condemn you to death."˙ These procedures may make for good fiction but they do not comport with Supreme Court decisions or with the Fourteenth Amendment due process clause of the Constitution.

 We read *Freedman, supra, Marcus, supra,* and *Blount, supra,* as requiring at the very least an advance judicial determination of obscenity. No effort nor honest belief, however well intentioned, by an administrative body can be used as a substitute for a judicial determination of obscenity. Accordingly, we hold that to the extent the statutes of Ohio and the regulations of the Department of Liquor Control prevent plaintiff permit holders or any other persons similarly situated from dealing in publications which have not, in a prior adversary hearing before a competent judicial tribunal, been deemed to be obscene, such statutes and regulations are violative of Fourteenth Amendment procedural due process and are unconstitutional and void.

We therefore enjoin the Department of Liquor Control and its agents from making further seizures of alleged obscene material in the control of any permit holder without a prior judicial determination that such material is unprotected expression of freedom of speech or freedom of press.

---

4. It should be added that the procedures adopted by the Department pose a serious threat to the freedoms of speech and press as they apply to non-obscene material. This collateral danger to protected literature was observed by the Supreme Court in Bantam Books, *supra*, 372 U.S. at pp. 68–71, 83 S.Ct. 631. Also see, *New York Times, supra*, 403 U.S. at 714, 730–740, 91 S.Ct. 2140 (concurring opinion of White, J.)

Because we decide this case on Fourteenth Amendment procedural due process grounds, we do not reach the broader question of whether a Liquor Control Department is a proper agency for regulating obscenity, nor do we reach the question of whether, under the liquor control statute, a judicial determination of obscenity might properly subject the holder of obscene materials to disciplinary action by the Department. We hold today only that the Department cannot act as judge, jury and prosecuting attorney in a field where its expertise, if it exists at all, is merely peripheral. Only a judicial inquiry at an adversary hearing, conducted by a court, upon the basis of an affidavit or an indictment and which affords full protection of defendant's rights, can serve as a basis for a determination that specific literature is, in fact, obscene. In the absence of such a determination, we hold that the Department of Liquor Control has no authority to make such a determination and to initiate disciplinary measures pursuant thereto.

Costs against the defendant are assessed in the sum of $————.

It will be so ordered.

### ORDER

In accordance with an opinion simultaneously filed herein and for the reasons therein stated, it is hereby

Ordered that to the extent the statutes of Ohio and the regulations of the Department of Liquor Control and particularly Regulation LCC–1–52 prevent plaintiff or other similarly situated permit holders or licensees of said Department from dealing in publications which have not, in a prior adversary hearing before a competent judicial tribunal, been deemed to be obscene, such statutes and regulations are violative of the procedural due process protection of the Fourteenth Amendment to the Constitution of the United States of America and are therefore unconstitutional and void; and it is

Further ordered that the Department of Liquor Control and its duly authorized employees, agents and servants are hereby permanently enjoined from making further seizures of alleged obscene material in the possession or control of plaintiff or similarly situated permit holders or licensees of said Department without first having obtained a prior judicial determination that such material is obscene and therefore not within the class of speech protected by the First Amendment to the Constitution of the United States of America.