George PETO, Jr., c/b/a Loop
Carry Out, Plaintiff,

v.

Donald D. COOK, Director, Dept. of Li-
quor Control, State of Ohio, et al.,
Defendants.

Civ. No. 70-57.

United States District Court,
S. D. Ohio, E. D.

Sept. 19, 1973.

Laurence E. Sturtz, Columbus, Ohio, for plaintiff.

Thomas V. Martin, Asst. Atty. Gen. of Ohio, John A. Connor, II, Columbus, Ohio, for defendants.

## OPINION ON REMAND

Before PECK, Circuit Judge, and KINNEARY and RUBIN, District Judges.

CARL B. RUBIN, District Judge.

This matter is before the Court on an Order of Remand of the United States Supreme Court, 409 U.S. 1071, 93 S.Ct. 675, 34 L.Ed.2d 659 (December 18, 1972), for further consideration in light of California v. LaRue, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972), of our Opinion and Order of December 6, 1971, 339 F.Supp. 1300 (S.D.Ohio 1971) (three-judge court) (hereinafter referred to as *Peto I*). We decided to stay our reconsideration, pursuant to the remand, until the Court had ruled upon several obscenity issues, both substantive[1] and procedural,[2] which at the time of the present remand were *sub judice*.

Now that the above cited and controlling cases have been handed down, the present matter is ripe for determination. As the operative facts at bar were fully set forth in our earlier opinion, see 339:

F.Supp. at 1301–1302, they will not be repeated at this time.

■ We specifically reserved the question in *Peto I* of whether the defendant Department of Liquor Control has any legitimate role to play in the regulation of obscenity.[3] This question has now been answered affirmatively by a divided Supreme Court in *LaRue, supra.* In that case the Court held that states, pursuant to their police powers over alcohol as impliedly broadened by the Twenty-first Amendment, could regulate various forms of live entertainment, including topless and bottomless dancing, in bars, nightclubs and other liquor outlets, subject to its licensing powers. See *LaRue*, 409 U.S. at 113–115, 93 S.Ct. 390; Seagram & Sons v. Hostetter, 384 U.S. 35, 86 S.Ct. 1254, 16 L.Ed.2d 336 (1966); Hostetter v. Idlewild Liquor Corp., 377 U.S. 324, 84 S.Ct. 1293, 12 L.Ed.2d 350 (1968); also see Block v. Thompson, 472 F.2d 587 (C.A.5 1973). The Court found that California's conclusions that these forms of sexually explicit conduct, in conjunction with the consumption of alcohol produced various forms of antisocial behavior, were not facially unreasonable; and that its efforts to regulate such conduct, under its Twenty-first Amendment powers, was not violative of either the First or Fourteenth Amendments. See *LaRue*, 409 U.S. at 116–117, 93 S.Ct. 390.[4]

---

1. See Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); Kaplan v. California, 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973); United States v. 12 200 Ft. Reels of Super 8 mm. Film, 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973).

2. Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973); Roaden v. Kentucky, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973).

3. We noted at that time that: "Because we decide this case on Fourteenth Amendment procedural due process grounds, we do not reach the broader question of whether a Liquor Control Department is a proper agency for regulating obscenity, nor do we reach the question of whether, under the liquor control statute, a judicial determination of

obscenity might properly subject the holder of obscene materials to disciplinary action by the Department." *Peto I*, 339 F.Supp. at 1305.

4. The relatively greater powers of the states to regulate conduct, as opposed to beliefs, is well established in many First Amendment areas. This panel observed in Wolman v. Essex, 342 F.Supp. 399, 406 (S.D.Ohio 1972), *aff'd mem.* 409 U.S. 808, 93 S.Ct. 61, 34 L.Ed.2d 69 (1972), that a case that arose under the Religious Clause of the First Amendment: ". . . the State . . . has the right to regulate conduct generally, including religiously motivated conduct." *Id.* at 406n.10; also see Cantwell v. Connecticut, 310 U.S. 296, 303–304, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); Reynolds v. United States, 98 U.S. 145, 25 L.Ed. 244 (1878).

It is important, however, to note the limited reach of *LaRue*. It is applicable only where certain types of live entertainment or movies, in the context of licensed bars or nightclubs, "partake more of gross sexuality than of communication"; it reaches only those situations which can be characterized as "Bacchanalian revelries" and does not purport to proscribe ". . . a performance by a scantily clad ballet troupe in a theater." 409 U.S. at 118, 93 S.Ct. at 397; Escheat, Inc. v. Pierstorff, 354 F.Supp. 1120, 1124–1126 (W.D.Wis.1973); also see Paladino v. City of Omaha, 471 F.2d 812, 814 (C.A.8, 1972). The Court was careful to observe that ". . . as the mode of expression moves from the printed page to the commission of public acts that may themselves violate valid penal statutes, the scope of permissible state regulations significantly increases." *LaRue*, 409 U.S. at 117, 93 S.Ct. at 396. It necessarily follows that as the form the expression changes from public acts to the printed page, the State's regulatory powers under the Twenty-first Amendment suffer a corresponding diminishment, and the individual protections guaranteed by the First Amendment, and especially those which prohibit prior restraints, are of increasing significance. See Heller v. New York, 93 S.Ct. 2789; New York Times Co. v. United States, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971); Organization for a Better Austin v. Keefe, 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971); Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931); also see Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963).

The operative regulation of the defendant Department of Liquor Control is, therefore, of too broad a scope to come within the limited holding of *LaRue*.[5] It seeks to regulate not merely the forms of live entertainment which were before the Court in that case; the Ohio regulation also attempts to prohibit the sale of certain printed matter by providing that: "No permit holder . . . shall knowingly or willfully allow in . . . his . . . premises . . . any indecent, profane or obscene . . . *literature, pictures or advertising materials* . . ." (emphasis supplied). *See Peto I*, 339 F.Supp. at 1301–1302. The regulation is facially applicable to all such printed matter which may come within the recently adopted obscenity standards, see n. 1, *supra*, and not merely to live demonstrations involving "gross sexuality" or "bacchanalian revelries." It is, in addition, fully applicable to carry-out stores of the type now before us, as well as to on-premise consumption outlets. There is, however, no legislative findings, as were before the Court in *LaRue*, that the conjunction of the purchase of alcohol and purportedly obscene magazines for consumption on private property leads to a higher incidence of antisocial or otherwise undesirable behavior. *Cf.* Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971).

For all these reasons, the delicate tension that generally exists in this area between the First and Twenty-first Amendments in the instant case, unlike *LaRue*, shifts in favor of plaintiff's presumptively expansive First Amendment rights. See cases cited above; also see *LaRue*, 409 U.S. at 133–138, 93 S.Ct.

---

5. Regulation LCC–1–52, as promulgated by the Department of Liquor Control, provides that:

    No permit holder, his agent or employee, shall knowingly or willfully allow in, upon or about his licensed premises improper conduct of any kind, type or character; any improper disturbances; lewd, immoral activities or brawls; or any indecent, profane, or obscene language, songs, entertainment, literature, pictures, or advertis-

ing materials; nor shall any entertainment consisting of the spoken language or songs which can or may convey either directly or by implication an immoral meaning be permitted in, upon or about the permit premises.

See *Peto I*, 339 F.Supp. at 1301. The remainder of pertinent provisions of the Ohio legislative scheme for the regulation of obscenity by the defendant Department is set out in *Peto I*, *id.* at 1301, nn. 1–2.

390 (Marshall, J., *dissenting*). Therefore, to the extent O.R.C. § 4301.03 recognizes that the Department of Liquor Control has, under *LaRue*, some role to play in regulating obscenity, it is constitutional. To the extent, however, that the Department through Regulation LCC–1–52 attempts to exceed permissible standards of regulation over materials which are arguably protected by the First Amendment, as by taking administrative action against its licensees who possess printed matter which has not been previously found to be obscene at an adversary hearing before a competent judicial tribunal, it is unconstitutional and will be enjoined.

■ Even if the panel were to assume, *arguendo*, that the defendant had the substantive power to regulate the materials which were seized in this case, it is clear that the procedures which the Department employed herein were unconstitutional. It is now settled that, despite our holding in *Peto I* to the contrary, 339 F.Supp. at 1305, no prior adversary hearing is constitutionally required under the First and Fourteenth Amendments before the seizure of allegedly obscene books or films. See Heller v. New York, 413 U.S. 483, 487–490, 93 S.Ct. 2789, 2792–2793. So long as no "final restraint" is contemplated, see United States v. Thirty-Seven Photographs, 402 U.S. 363, 367, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971), the Constitution merely mandates that:

"[A] judicial determination must occur 'promptly so that administrative delay does not in itself become a form of censorship.'" United States v. Thirty-Seven Photographs, 402 U.S., at 367, 91 S.Ct. at 1404 (1971); Freedman v. Maryland, 380 U.S. 51, 57–59, 85 S.Ct. 734, 738–739, 13 L.Ed.2d 649 (1965). See Blount v. Rizzi, 400 U.S. 410, 419–421, 91 S.Ct. 423, 429–430, 27 L.Ed.2d 498 (1971); Teitel Film Corp. v. Cusak, 390 U.S. 139, 141–142, 88 S.Ct. 754, 755–756, 19 L.Ed.2d 966 (1968); Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70–71, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963). (footnote omitted)

■ However, it is now further settled under *Roaden v. Kentucky, supra,* that the seizure, prior to judicial determination of obscenity, of a book or film or any other work which is arguably protected by the First Amendment, must be made pursuant to a valid search warrant, issued by a magistrate who has been presented with an opportunity to "'focus searchingly on the question of obscenity.' See Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789 (1973)." 93 S.Ct. at 2802. A valid warrant in these circumstances is required because:

Such precipitous action by a police officer, without the authority of a constitutionally sufficient warrant, is plainly a form of prior restraint and is, in those circumstances, unreasonable under Fourth Amendment standards. The seizure is unreasonable, not simply because it would have been easy to secure a warrant, but rather because prior restraint of the right of expression, whether by books or films, calls for a higher hurdle in the evaluation of reasonableness. The setting of the bookstore or the commercial theatre, each presumptively under the protection of the First Amendment, invokes such Fourth Amendment warrant requirements because we examine what is "unreasonable" in the light of the values of freedom of expression. (footnote omitted)

■ By these holdings the Court has reaffirmed its early decisions in Marcus v. Search Warrant, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961); A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964); Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); and Blount v. Rizzi, 400 U.S. 410, 91 S.Ct. 423, 27 L.Ed.2d 498 (1971) relied on by this panel in *Peto I, supra;* also see United States v. Thirty-Seven Photographs, *supra;* Lee Art Theatre v. Virginia, 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968). Because the manner in which the defendant Department obtained evidence for use against plaintiff in a liquor license revocation hear-

ing was in violation of the Fourth Amendment, administrative actions resulting from such seizures must be dismissed and the Department must be enjoined from so acting in the future.[6]

Deciding this issue as we do, and by holding that the massive seizure of plaintiff's magazines without warrant is *per se* violative of the Fourth Amendment, it is not necessary for the Court to ". . . scrutinize [this] large-scale seizure of books, films, or other materials presumptively protected under the First Amendment to be certain that the requirements of *A Quantity of Copies of Books* and *Marcus* are fully met." *Heller v. New York, supra*.

It will be so ordered.

### ORDER

For the reasons and on the grounds which more fully appear in the Opinion of this Court filed simultaneously,

It is hereby ordered:

(1) That to the extent O.R.C. § 4301.-03 recognizes that the Department of Liquor Control has a valid function in regulating obscenity, within the limits set forth in California v. LaRue, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972), it is constitutional;

And it is further ordered:

(2) That to the extent Regulation LCC–1–52 of said Department of Liquor Control exceeds the permissible limits of regulation as set forth in *California v. LaRue, supra*, and seeks to regulate printed materials which have not, in an adversary hearing before a competent judicial tribunal, been previously found obscene under the standards of Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) and Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S. Ct. 2628, 37 L.Ed.2d 446 (1973), it is unconstitutional and is hereby permanently enjoined:

And it is still further ordered:

(3) That to the extent said Department of Liquor Control and its duly authorized employees, agents and servants have made seizures of allegedly obscene materials in the possession or control of plaintiff or similarly situated licensees of the Department, which are properly subject to its regulatory powers, without complying with the procedures and standards under the Fourth Amendment, as set forth in Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973) and Roaden v. Kentucky, 413 U. S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973), such seizures are unconstitutional; and such seized materials must be returned to their rightful owners; and the Department permanently enjoined from conducting such seizures in the future.

---

6. The policies of the defendant department, while improper under the cases cited above, were consistent with the then accepted Ohio rule. See State of Ohio v. Albini, 31 Ohio St.2d 27, 285 N.E.2d 327 (1972); see also State ex rel. Sensenbrenner v. Adult Book Store, 26 Ohio App.2d 183, 55 Ohio Op.2d 343, 271 N.E.2d 13 (Ohio Ct.App.1971). Both *Albini* and *Sensenbrenner* were vacated by the Supreme Court on the same day it decided *Heller* and *Roaden*. See 413 U.S. 912, 93 S.Ct. 3049, 37 L.Ed.2d 1031 (1973); 413 U.S. 911, 93 S.Ct. 3035, 37 L.Ed.2d 1024 (1973). In vacating these decisions after announcing *Heller* and *Roaden*, the Court attempted as we attempt here, to balance the policies embodied in both the First and Fourth Amendments in a manner which gave credence to both. This requires the obtaining of a valid search warrant for the seizure of a single copy of an allegedly obscene work, presumptively protected by the First Amendment; and the releasing of this material under a form of bail pending a determination before a Court on the merits of its obscenity. See Heller v. New York, *supra* Roaden v. Kentucky, *supra*. By massively seizing large numbers of copies of the same work in the present case and by holding them for inordinate periods without a hearing on the merits before a judge, and without allowing any provisions for mailing these materials back to the plaintiff, the defendant department failed to conform to either the then prevailing federal or state constitutional standards.