PETO, JR., D. B. A. LOOP CARRY OUT, *v.* COOK, DIRECTOR, DEPT.
OF LIQUOR CONTROL, STATE OF OHIO, ET AL.

(No. 70-57—Decided September 19, 1973.)

United States District Court, Southern District of
Ohio, Eastern Division.

Mr. *Laurence E. Sturtz*, for plaintiff.
Mr. *Thomas V. Martin,* assistant attorney general, and
Mr. *John A. Connor, II,* for defendants.

Before JOHN W. PECK, Judge, United States Court of
Appeals for the Sixth Circuit; JOSEPH P. KINNEARY, Chief
Judge United States District Court; and CARL B. RUBIN,
United States District Judge.

RUBIN, District Judge. This matter is before the
Court on on Order of Remand of the United States Su-
preme Court, 409 U. S. 1071 (December 18, 1972), for fur-
ther consideration in light of *California* v. *LaRue,* 409 U.
S. 109 (1972), of our Opinion and Order of December 6,
1971, 29 Ohio Misc. 85, 339 F. Supp. 1300 (S. D. Ohio 1971)
(three-judge court) (hereinafter referred to as *Peto I*).
We decided to stay our reconsideration, pursuant to the
remand, until the Court had ruled upon several obscenity
issues, both substantive[1] and procedural,[2] which at the time
of the present remand were *sub judice.*

Now that the above cited and controlling cases have
been handed down, the present matter is ripe for determina-
tion. As the operative facts at bar were fully set forth in
our earlier opinion, see 379 F. Supp. at 1301-1302, they will
not be repeated at this time.

We specifically reserved the question in *Peto I* (29 Ohio
Misc. 85) of whether the defendant Department of Liquor
Control has any legitimate role to play in the regulation
of obscenity.[3] This question has now been answered af-

---

[1]See *Miller* v. *California,* U. S. , 41 U. S. L. W. 4925 (June
21, 1973); *Paris Adult Theatre I* v. *Slaton,* U. S. , 41 U. S. L. W.
4935 (June 21, 1973); *Kaplan* v. *California,* U. S. , 41 U S. L. W.
4958 (June 21, 1973); *United States* v. *12 200 Ft. Reels of Super 8 mm.
Film,* U. S. , 41 U. S. L. W. 4961 (June 21, 1973).

[2]*Heller* v. *New York,* U. S. , 41 U. S. L. W. 5067 (June 25,
1973); *Roaden* v. *Kentucky,* U. S. , 41 U. S. L. W. 5070 (June
25, 1973).

[3]We noted at that time that: "Because we decide this case on
Fourteenth Amendment procedural due process grounds, we do not
reach the broader question of whether a Liquor Control Department

firmatively by a divided Supreme Court in *LaRue, supra.*
In that case the Court held that States, pursuant to their
police powers over alcohol as impliedly broadened by the
Twenty-first Amendment, could regulate various forms of
live entertainment, including topless and bottomless danc-
ing, in bars, nightclubs and other liquor outlets, subject to
its licensing powers. See *LaRue, supra,* 409 U. S. at 113-
115; *Seagram & Sons* v. *Hostetter,* 384 U. S. 35 (1966);
*Hostetter* v. *Idlewild Bon Voyage Liquor Corp.,* 377 U. S.
324 (1964); also see *Block* v. *Thompson,* 472 F. 2d 587 (C.
A. 5, 1973). The Court found that California's conclusions
that these forms of sexually explicit conduct, in conjunc-
tion with the consumption of alcohol produced various forms
of antisocial behavior, were not facially unreasonable; and
that its efforts to regulate such conduct, under its Twenty-
first Amendment powers, was not violative of either the
First or Fourteenth Amendments. See *LaRue, supra,* at
116-117.[4]

It is important, however, to note the limited reach of
*LaRue.* It is applicable only where certain types of live
entertainment or movies, in the context of licensed bars or
nightclubs, "partake more of gross sexuality than of com-
munication"; it reaches only those situations which can
be characterized as "bacchanalian revelries" and does not
purport to proscribe ". . . a performance by a scantily clad
ballet troupe in a theater." *Id.,* at 118; *Escheat, Inc.* v.

---

is a proper agency for regulating obscenity, nor do we reach the ques-
tion of whether, under the liquor control statute, a judicial determina-
tion of obscenity might properly subject the holder of obscene materials
to disciplinary action by the Department." *Peto I, supra,* 339 F. Supp.
at 1305.

[4]The relatively greater powers of the States to regulate conduct,
as opposed to beliefs, is well established in many First Amendment
areas. This panel observed in *Wolman* v. *Essex,* 342 F. Supp. 399, 406
(S. D. Ohio 1972), aff'd mem. 409 U. S. 808 (1972), that in a case
that arose under the Religious Clause of the First Amendment: ". . .
the State . . . has the right to regulate, conduct generally, including
religiously motivated conduct." Also see, *Id.,* 406 n. 10; *Cantwell* v.
*Connecticut,* 310 U. S. 296, 303-304 (1940); *Reynolds* v. *United States,*
98 U. S. 145 (1878).

*Pierstorff*, 354 F. Supp. 1120, 1124-1126 (W. D. Wis. 1973); also see *Paladine* v. *City of Omaha*, 471 F. 2d 812, 814 (C. A. 8, 1972). The Court was careful to observe that ". . . as the mode of expression moves from the printed page to the commission of public acts that may themselves violate valid penal statutes, the scope of permissible state regulations significantly incrases." *LaRue, supra*, at 117. It necessarily follows that as the form the expression changes from public acts to the printed page, the State's regulatory powers under the Twenty-first Amendment suffer a corresponding diminishment, and the individual protections, guaranteed by the First Amendment, and especially those which prohibit prior restraints, are of increasing significance. See *Heller* v. *New York, supra*, at 8 (slip opinion); *New York Times Co.* v. *United States*, 403 U. S. 713 (1971); *Organization for a Better Austin* v. *Keefe*, 402 U. S. 415 (1971); *Near* v. *Minnesota*, 283 U. S. 697 (1931); also see *Bantam Books, Inc.*, v. *Sullivan*, 372 U. S. 58, 70 (1963).

The operative regulation of the defendant Department of Liquor Control is, therefore, of too broad a scope to come within the limited holding of *LaRue*.[5] It seeks to regulate not merely the forms of live entertainment which were before the Court in that case; the Ohio regulation also attempts to prohibit the sale of certain printed matter by providing that: "No permit holder . . . shall knowingly or willfully allow in . . . his . . . premises . . . any indecent,

---

[5]Regulation LCC-1-52, as promulgated by the Department of Liquor Control, provides that:

No permit holder, his agent or employee, shall knowingly or willfully allow in, upon or about his licensed premises improper conduct of any kind, type or character; any improper disturbances; lewd, immoral activities or brawls; or any indecent, profane, or obscene language, songs, entertainment, literature, pictures, or advertising materials; nor shall any entertainment consisting of the spoken language or songs which can or may convey either directly or by implication an immoral meaning be permitted in, upon or about the permit premises.

See *Peto I* at 1301, n. 3. The remainder of pertinent provisions of the Ohio legislative scheme for the regulation of obscenity by the defendant Department is set out in *Peto I* at 1301, nn. 1-2,

profane or obscene . . . *literature, pictures or advertising materials . . .*" (emphasis supplied). See *Peto I* at 1301-1302, 29 Ohio Misc. at 87. The regulation is facially applicable to all such printed matter which may come within the recently adopted obscenity standards, see n. 1, *supra*, and not merely to live demonstrations involving "gross sexuality" or "bacchanalian revelries." It is, in addition, fully applicable to carry-out stores of the type now before us, as well as to on-premise consumption outlets. There are, however, no legislative findings as were before the Court in *LaRue*, that the conjunction of the purchase of alcohol and purportedly obscene magazines for consumption on private property leads to a higher incidence of antisocial or otherwise undesirable behavior. Cf. *Wisconsin* v. *Constantineau*, 400 U. S. 433 (1971).

For all these reasons, the delicate tension that generally exists in this area between the First and Twenty-first Amendments in the instant case, unlike *LaRue*, shifts in favor of plaintiff's presumptively expansive First Amendment rights. See cases cited *supra*; also see *LaRue, supra*, at 133-138 (Marshall, J., *dissenting*). Therefore, to the extent R. C. 4301.03 recognizes that the Department of Liquor Control has, under *California* v. *LaRue*, some role to play in regulating obscenity, it is constitutional. To the extent, however, that the Department through Regulation LCC-1-52 attempts to exceed permissible standards of regulation over materials which are arguably protected by the First Amendment, as by taking administrative action against its licensees who possess printed matter which has not been previously found to be obscene at an adversary hearing before a competent judicial tribunal, it is unconstitutional and will be enjoined.

Even if the panel were to assume, *arguendo*, that the defendant had the substantive power to regulate the materials which were seized in this case, it is clear that the procedures which the Department employed herein were unconstitutional. It is now settled that, despite our holding in *Peto I* to the contrary, 339 F. Supp. 1305, no prior adversary hearing is constitutionally required under the First

and Fourteenth Amendments before the seizure of allegedly obscene books or films. See *Heller* v. *New York, supra,* 4-6 (slip opinion). So long as no "final restraint" is contemplated, see *United States* v. *Thirty-Seven Photographs,* 402 U. S. 363, 367 (1971), the Constitution merely mandates that:

[A] judicial determination must occur "promptly so that administrative delay does not in itself become a form of censorship." *United States* v. *Thirty-Seven Photographs, supra,* 402 U. S., at 367 (1971) ; *Freedman* v. *Maryland, supra,* 380 U. S., at 57-59 (1965). See *Blount* v. *Rizzi,* 400 U. S. 410, 419-421 (1971) ; *Teitel Film Corp.* v. *Cusak,* 390 U. S. 139, 141-142 (1968) ; *Bantam Books, Inc.,* v. *Sullivan,* 372 U. S. 58, 70-71 (1963). [footnote omitted] *Heller* v. *New York, supra,* at 6 (slip opinion).

However, it is now further settled under *Roaden* v. *Kenetucky, supra,* that the seizure, prior to judicial determination of obscenity, of a book or film or any other work which is arguably protected by the First Amendment, must be made pursuant to a valid search warrant, issued by a magistrate who has been presented with an opportunity to "focus searchingly on the question of obscenity. See *Heller* v. *New York,*     U. S.     (p. 5) (1973)." *Id.,* at 10 (slip opinion). A valid warrant in these circumstances is required because:

Such precipitous action by a police officer, without the authority of a constitutionally sufficient warrant, is plainly a form of prior restraint and is, in those circumstances, unreasonable under Fourth Amendment standards. The seizure is unreasonable, not simply because it would have been easy to secure a warrant, but rather because prior restraint of the right of expression, whether by books or films, calls for a higher hurdle in the evaluation of reasonableness. The setting of the bookstore or the commercial theatre, each presumptively under the protection of the First Amendment, invokes such Fourth Amendment warrant requirements because we examine what is "unreasonable" in the light of the values of freedom of expression. [footnote omitted] *Id.,* at 8 (slip opinion).

By these holdings the Court has reaffirmed its early

decisions in *Marcus* v. *Search Warrant*, 367 U. S. 717 (1961); *A Quantity of Copies of Books* v. *Kansas*, 378 U. S. 205 (1964); *Freedman* v. *Maryland*, 380 U. S. 51 (1965); and *Blount* v. *Rizzi*, 400 U. S. 410 (1971) relied on by this panel in *Peto I, supra*; also see *United States* v. *Thirty-Seven Photographs, supra*; *Lee Art Theatre, Inc.*, v. *Virginia*, 392 U. S. 636 (1968). Because the manner in which the defendant Department obtained evidence for use against plaintiff in a liquor license revocation hearing was in violation of the Fourth Amendment, administrative actions resulting from such seizures must be dismissed and the Department must be enjoined from so acting in the future.[9]

Deciding this issue as we do, and by holding that the massive seizure of plaintiff's magazines without warrant is *per se* violative of the Fourth Amendment, it is not necessary for the Court to ". . . scrutinize [this] large scale seizure of books, films, or other materials presumptively protected under the First Amendment to be certain that the requirements of *Quantity of Copies of Books* and *Marcus* are fully met." *Heller* v. *New York, supra*, at 8 (slip opinion).

*It will be so ordered.*

---

[9] The policies of the defendant department, while improper under the cases cited above, were consistent with the then accepted Ohio rule. See *State* v. *Albini*, 31 Ohio St. 2d 27 (1972); see also *State, ex rel. Sensenbrenner*, v. *Adult Book Store*, 26 Ohio App. 2d 183, 55 Ohio Op. 2d 342 (Ohio Ct. App. 1971). Both *Albini* and *Sensenbrenner* were vacated by the Supreme Court on the same day it decided *Heller* and *Roaden*. See 41 U. S. L. W. 3666, 3667 (June 26, 1973). In vacating these decisions after announcing *Heller* and *Roaden*, the Court attempted as we attempt here, to balance the policies embodied in both the First and Fourth Amendments in a manner which gave credence to both. This requires the obtaining of a valid search warrant for the seizure of a single copy of an allegedly obscene work, presumptively protected by the First Amendment; and the releasing of this material under a form of bail pending a determination before a Court on the merits of its obscenity. See *Heller* v. *New York, supra*, at 10 (slip opinion), *Roaden* v. *Kentucky, supra*, U. S. at n. 6. By massively seizing large numbers of copies of the same work in the present case and by holding them for inordinate periods without a hearing on the merits before a judge, and without allowing any provisions for mailing these materials back to the plaintiff, the defendant department failed to conform to either the then prevailing federal or state constitutional standards,