**UNITED STATES of America,
Plaintiff,**

v.

**David M. TREATMAN aka Dave Davis,
dba Erik Imports, Defendant.**

**UNITED STATES of America,
Plaintiff,**

v.

**Richard L. JAMES et al., Defendants.**

**Nos. CV 74–2569–R and CV 75–744–IH.**

United States District Court,
C. D. California.

Feb. 6, 1976.

William D. Keller, U. S. Atty. by John E. Nordin, II, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff.

Michael S. Luros, Joseph Taback, Gold, Herscher & Taback, Beverly Hills, Cal., for defendant.

Before ELY, Circuit Judge, and HILL and REAL, District Judges.

## OPINION

IRVING HILL, District Judge:

39 U.S.C. § 3010 prohibits the mailing of sexually oriented advertisements to persons who have informed the Postal Service that they do not desire to receive such material. The Postal Service maintains a list of such persons, which list is available to all mailers. Where a mailer has been found by a court to have violated § 3010, by sending such material to any person whose name has appeared on the list for at least 30 days, 39 U.S.C. § 3011 authorizes a district court to issue against the mailer various types of injunctive relief which limit and restrict him in sending and receiving mail. We set forth the relevant provisions of both sections in the margin.[1] In what is ap-

---

1. "§ 3010. *Mailing of sexually oriented advertisements.*

"(a) Any person who mails . . . any sexually oriented advertisement shall place on the envelope or cover thereof his name and address as the sender thereof and such mark or notice as the Postal Service may prescribe.

"(b) Any person, on his own behalf or on behalf of any of his children who has not attained the age of 19 years . . . may file with the Postal Service a statement . . . that he desires to receive no sexually oriented advertisements through the mails. The Postal Service shall maintain and keep current, insofar as practicable, a list of the names and addresses of such persons and shall make the list (including portions thereof or changes therein) available to any person, upon such reasonable terms and conditions as it may prescribe, including the payment of such service charge as it determines to be necessary to defray the cost of compiling and maintaining the list and making it available as provided in this sentence. No person shall mail or cause to be mailed any sexually oriented advertisement to any individual whose name and address has been on the list for more than 30 days.

"(d) 'Sexually oriented advertisement' means any advertisement that depicts, in actual or simulated form, or explicitly describes, in a predominantly sexual context, human genitalia, any act of natural or unnatural sexual in-

tercourse, any act of sadism or masochism, or any other erotic subject directly related to the foregoing. . . .

"§ 3011. *Judicial enforcement.*

"(a) Whenever the Postal Service believes that any person is mailing . . . any sexually oriented advertisement in violation of section 3010 of this title, it may request the Attorney General to commence a civil action against such person in a district court of the United States. Upon a finding by the court of a violation of that section, the court may issue an order including one or more of the following provisions as the court deems just under the circumstances:

"(1) a direction to the defendant to refrain from mailing any sexually oriented advertisement to a specific addressee, to any group of addressees, or to all persons;

"(2) a direction to any postmaster to whom sexually oriented advertisements originating with such defendant are tendered for transmission through the mails to refuse to accept such advertisements for mailing; or

"(3) a direction to any postmaster at the office at which . . . letters or mail arrive, addressed to the defendant . . . to return the registered or certified letters or other letters or mail to the sender appropriately marked as being in response to mail in violation of section 3010 of this title, after the defendant, or his representative, has been notified and given reasonable opportu-

parently a case of first impression, we hold in this Opinion that § 3011 is unconstitutional in most respects. We hold it to be constitutionally valid in a very limited context.

As the caption shows, we sit in two separate cases involving separate mailers and separate mailings. By agreement of all parties, the two cases have been consolidated. In each case, the Defendant admits that before the instant action was begun, he violated § 3010 by mailing sexually oriented advertisements to several persons whose names and addresses had appeared for more than 30 days on the Postal Service list of persons desiring not to receive such material. The government seeks against each Defendant the maximum permitted relief, i. e., all of the various types of injunctions authorized by § 3011. In each case, the Defendant resists the issuance of any injunctive relief at all on the ground that § 3011 is totally unconstitutional. Moreover, Defendants have each filed a counterclaim seeking a declaration that § 3011, on its face and as applied, is totally unconstitutional. A three-judge court was convened because each Defendant's counterclaim seeks an injunction prohibiting the enforcement of § 3011 against him.

It is necessary, at the threshold, to outline the statutory scheme in some detail and separately to characterize each of the types of injunctive relief authorized under § 3011.

Section 3010, the validity of which is not here challenged, permits an individual to inform the Postal Service in writing that he does not wish to receive sex-

ually oriented advertisements. The Postal Service is required to keep a current list of the names and addresses of such persons and to make available to any mailer a copy of the list. The section goes on to prohibit the mailing of any sexually oriented advertisements to any person whose name has been on the list for more than 30 days. Section 3010(a) also requires any person mailing sexually oriented advertisements to place on the envelope or cover thereof "such mark or notice as the Postal Service may prescribe". By regulations, the Postmaster General has prescribed that such materials shall contain, on the outside envelope or on an inside sealed envelope, the words "Sexually Oriented Ad".[2] The validity of these regulations is not before us.

Section 3010(d) defines a "sexually oriented advertisement". The instant cases were argued to the Court on stipulated facts. In each case, the materials in question are before us as part of the stipulation. Each of the instant Defendants admits that the materials which are the subject of the action against him fall within the statutory definition. The statutory definition of "sexually oriented advertisement" is not coterminus with any statutory or decisional definition of obscenity. The government does not contend that any of the materials involved in either case are obscene. Thus, obscenity is not an issue in the instant matter.

We proceed now to analyze § 3011, the statute which is attacked herein. Section 3011(a) provides that if the Postal Service believes a person is mailing sexu-

nity to examine such letters or mail and to obtain delivery of mail which is clearly not connected with activity alleged to be in violation of section 3010 of this title.

. . . . .

"(c) In preparation for, or during the pendency of, a civil action under subsection (a) of this section, a district court . . . upon application therefor by the Attorney General and upon a showing of probable cause to believe the statute is being violated, may enter a temporary restraining order or preliminary injunction containing such terms as the court deems just, including, but not limited to, provi-

sions enjoining the defendant from mailing any sexually oriented advertisement to any person or class of persons, directing any postmaster to refuse to accept such defendant's sexually oriented advertisements for mailing, and directing the detention of the defendant's incoming mail by any postmaster pending the conclusion of the judicial proceedings. . . ."

**2.** 39 C.F.R. § 124.9(e)(1) (1974), now found as § 124.95(a) of the Postal Service Manual which is incorporated by reference in the Code of Federal Regulations. See 39 C.F.R. §§ 111.1 and 111.5 (1975).

ally oriented advertisements in violation of § 3010 to a person named in the list, it may request the Attorney General to commence a civil action in the district court for injunctive relief. If the court finds that the defendant has violated § 3010 as alleged, it may issue an injunction which may include one or more of the types of injunctive relief described in subsections (a)(1), (a)(2) and (a)(3) of § 3011:

> *(a)(1) Injunction*—an injunction prohibiting the defendant from mailing any sexually oriented advertisement. The injunction may prohibit such mailing to any specified addressee, to any specified group of addressees or to all persons.

> *(a)(2) Injunction*—an injunction requiring any postmaster to whom the defendant delivers sexually oriented advertising for mailing, to refuse to accept from him any and all such advertisements for mailing.

> *(a)(3) Injunction*—an injunction ordering any postmaster at a Post Office serving the defendant, to hold up all incoming mail addressed to the defendant. The defendant then has an opportunity to examine and obtain delivery of such of his incoming mail as is clearly not connected with sexually oriented advertising, and the Postmaster is ordered to return all the rest of the incoming mail to the senders marked as being responses to sexually oriented advertising.

We will refer to these types of injunctions hereinafter by the subsection number, e. g., "(a)(1) injunction".

Section 3011(c) authorizes the district court to issue, *pendente lite,* a temporary restraining order or preliminary injunction, of the (a)(1) and (a)(2) types. Section 3011(c) also authorizes a *pendente lite* injunction of the (a)(3) type but even broader. It may order the detention of all of the defendant's incoming mail pending the "conclusion of the judicial proceedings." This denies the defendant even an opportunity to obtain such mail as is not related to sexually oriented ad-

vertising until his trial is over. Depending on the time required to conclude the case, subsection (c) could authorize the total detention of all of a defendant's incoming mail for months or years.

We note that in addition to the injunctive provisions of § 3011, there are criminal sanctions for willful, violations of § 3010. See 18 U.S.C. §§ 1735, 1737. These criminal provisions are not in issue in the instant cases.

## DISCUSSION OF PRIOR DECISIONS

The statute under attack authorizes a wide range of injunctive relief and we are required to pass upon the validity of several different types of authorized injunctions. Our legal discussion will therefore be somewhat compartmentalized. We believe it would be helpful, therefore, to abstract in one section those cases to which we will be making frequent references. The government contends that *Rowan v. U. S. Post Office,* 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970), and two three-judge court opinions, *Universal Specialties v. Blount,* 331 F.Supp. 52 (C.D.Cal.1971), and *Pent-R Books v. U. S. Postal Service,* 328 F.Supp. 297 (E.D.N.Y.1971), are dispositive of all issues before us. We do not agree.

In *Universal Specialties,* a mailer, on constitutional grounds, sought an injunction against the enforcement of both § 3010 and § 3011 and the regulations promulgated thereunder. The court found that the regulations were incorrectly promulgated. On that ground, the court enjoined the Postal Service *pendente lite* from enforcing the regulations. The case appears to have been terminated without any further decision and without trial. Apparently the regulations were subsequently repromulgated so as to avoid the infirmity pointed out by that court. The opinion does not reach the question of the constitutional validity of any portion of § 3011.

In *Pent-R Books,* the court dealt extensively with several aspects of § 3010 and the regulations thereunder. The case was initiated by a mailer who ap-

parently challenged only the validity of § 3010. The government had apparently not sought any injunction under § 3011. The opinion holds § 3010 to be constitutionally valid but does not consider the validity of § 3011 in any respect.

The most significant decision for our purposes is *Rowan,* even though there the Supreme Court held constitutionally valid a statute which is not before us, i. e., 39 U.S.C. § 3008 (previously found at 39 U.S.C. § 4009 (1964) Ed.Supp.IV). That statute is designed to protect individuals from receiving pandering advertisements through the mails if they do not desire to receive such advertisements. As construed by the Supreme Court, it permits an individual who has received what he believes to be a pandering advertisement from a given mailer to obtain from the Postal Service an order that such mailer shall no longer address to him any advertisement of any kind whatsoever. The Supreme Court, speaking unanimously, balanced the First Amendment rights of the mailer against the privacy rights of the unwilling recipient. While recognizing that the material involved was within the ambit of the First Amendment, the Court denied the existence of a constitutional right "to send unwanted material into the home of another." As the Court said, "no one has the right to press even 'good' ideas on an unwilling recipient", 397 U.S. at 738, 90 S.Ct. at 1491. In an oft-quoted statement, the Court said "a mailer's right to communicate must stop at the mailbox of an unreceptive addressee", 397 U.S. at 736–37, 90 S.Ct. at 1490.

There are important differences between § 3008 involved in *Rowan,* and §§ 3010 and 3011, here involved. Whereas § 3008 applies to pandering advertisements, the instant statutes apply to advertisements which, though sexually oriented, have no obscenity context or character. Under § 3008, and *Rowan,* the *individual mailer* named in the Postal Service order is prohibited from mailing anything to the addressee. Under the instant statutes, once a person has placed his name on the list, *all mailers* are prohibited from mailing sexually oriented advertisements to him.

There are also procedural differences with respect to the institution of a law suit. Under § 3008, the statute provides for the Postal Service automatically to issue an order commanding the named mailer to cease transmitting advertising to the named recipient. If, after the order has issued, the Postal Service believes that the mailer has violated the order, it must notify the mailer, and if he requests, hold an administrative hearing. If a violation is administratively found, the Postal Service thereafter may ask the Attorney General to institute a court proceeding. The only injunctive relief which the court may thereafter grant is a restatement of the Postal Service order in the form of an injunction. The only purpose and scope of the court proceeding is thus a very limited one, to permit a contempt remedy if any named mailer insists upon sending advertisements to a named addressee after the Postal Service has ordered him to stop doing so. Section 3008 contains no statutory command to the mailer. The matter proceeds from an automatically issued administrative order to an administrative hearing and determination that said order has been violated, to a court order (i. e., injunction) commanding compliance with the administrative order.

Under the instant statutes, a statutory command to the mailer in § 3010(a) takes the place of the Post Office order. Under § 3011 if the Postal Service believes that the statutory command has been violated, it may, based only upon its belief and without any administrative hearing or determination, seek the institution of an action by the Attorney General. If the court finds that the defendant has violated the statutory command of § 3010 to mail no sexually oriented advertising to any person whose name has been on the list for more than 30 days, the court may issue an order (i. e., injunction) not only compelling the defendant to refrain from such mailings to all addressees on the list, but much,

much more. The injunction may also prohibit mailing sexually oriented advertisements to everybody; moreover, it may authorize the Postmaster to interfere in various ways with all mail originating from, and addressed to, the defendant. The wider sanctions permitted by § 3011 have no counterpart in § 3008 and are not validated in *Rowan*. And, the injunction remedy involved in *Rowan* was self-executing; the Postal Service was not vested with any function in the enforcement or implementation of the injunction.

Thus, although we recognize and apply the principles enunciated in *Rowan,* we must at the same time recognize that *Rowan* is not dispositive of the instant case.

The other obviously relevant Supreme Court decisions which we frequently cite, *infra,* are *Lamont v. Postmaster General,* 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965) and *Blount v. Rizzi,* 400 U.S. 410, 91 S.Ct. 423, 27 L.Ed.2d 498 (1971). In *Lamont,* the Court struck down a statute (39 U.S.C. § 4008(a)) requiring the Postal Service to detain what it deemed to be "communist political propaganda" and to deliver it only upon the addressee's written request. The Court's opinion articulates a right of an addressee to receive mail addressed to him. It stands for the proposition that an addressee is not required to take any affirmative action to have his mail delivered to him, whether the mail is something he previously requested and knew was coming, or something sent him without prior request or knowledge on his part.

In *Rizzi,* the Court dealt with 39 U.S.C. §§ 3006–3007 which authorized the Postmaster General to hold up the transmission of incoming mail to any person who had, by mail, previously sold or advertised what the Postmaster General believed to be obscene matter. The Court struck down the statutes, holding that they failed to provide the procedural safeguards classically enunciated in *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), as being

required for a determination of obscenity.

## LEGAL DISCUSSION

We pass now to an examination of the validity under the Constitution, of each of the three types of injunction authorized by § 3011.

*The (a)(1) Injunction:*

An (a)(1) injunction prohibiting a defendant from mailing out sexually oriented advertising, could be drawn so as to prohibit mailing to some or all of three different groups of addressees:

(1) People who have had their names put on the Postal Service list;

(2) People whose names are not on the list and who have *specifically requested* the advertising materials; and

(3) People who have done neither, i. e., people who have not had their names placed on the list and who have made no request for the materials.

▆ We hold that the statute's authorization of an injunction limited to the first group is constitutionally valid, whereas the statute's authorization of any injunction extended to the second and third group violates the Constitution.

We believe that the principles of *Rowan* validate an injunction prohibiting the mailing of sexually oriented advertising to persons who have taken affirmative action to put their names on the Postal Service list. As to such persons, the statutory scheme of § 3011 seems to us to be a reasonable and proper balancing of equities and rights. *Rowan* teaches us that Congress may give preeminence to the rights of an unwilling recipient over those of the mailer, and the mailer has no right to send unwanted material, even material within the ambit of the First Amendment, into a person's home. What constitutes "sexually oriented advertising" is properly and precisely defined in the statute. The Postal Service list, which is readily available to mailers, contains precise names and addresses of people who do not wish such mate-

rial sent to them. The statutory commandment that people on the list not be sent such advertising is, we feel, within the power of Congress to enact.

In one respect, the injunction authorized in *Rowan* is more drastic than a § 3011(a)(1) injunction limited to persons on the list. *Rowan* permits a prohibition against *all further mailing of any kind,* whereas an (a)(1) injunction is limited to sexually oriented advertising only. In another respect, the *Rowan* injunction is narrower and less drastic. A *Rowan* injunction is limited to a single named addressee whereas an (a)(1) injunction, as here discussed, applies to the entire list of addressees. But we see this wider application as a distinction without a difference in terms of constitutional validity.

■■ Defendants argue that an (a)(1) injunction as applied only to persons whose names are on the list, is unconstitutional as a prior restraint. As it affects the individual mailer, it appears to us to be no more a prior restraint than was the injunction validated in *Rowan.* Since the Supreme Court's opinion in *Rowan* does not mention the prior restraint concept or cases, we believe the necessary implication of *Rowan* is that if a prior restraint is involved at all, it is a permissible prior restraint.[3]

We hold on the other hand that any (a)(1) injunction prohibiting mailing to any persons other than those named on the list would be invalid and the statute is unconstitutional in its authorization of such broader injunctions.

■ At oral argument, the government, in effect, conceded that § 3011 (a)(1) is unconstitutional insofar as it permits an injunction against sending sexually oriented advertising to people who have asked to receive it. In our view, this was a proper and prudent concession. The Supreme Court in *Rowan* struck a balance between the mailer's right to communicate and the unreceptive addressee's right to privacy. The balance was struck in favor of the addressee and the Court thereby established the principle that the government could aid individuals in insulating themselves from unwanted mail. But there is no such balance to be struck when considering the validity of an injunction against sending the advertising to people who have asked for it. The First Amendment right of an addressee to receive mail has been recognized in *Rizzi, supra,* and *Lamont, supra.* The First Amendment right of the mailer to disseminate information was, we believe, implicitly recognized in *Rowan* (see 397 U.S. at 736–39, 90 S.Ct. 1484), and elsewhere.[4] We know that "speech is not stripped of First Amendment protection merely because it appears [in the form of an advertisement]", *Bigelow, supra,* 421 U.S. at 818, 95 S.Ct. at 2231 (1975), and that the commercial element of speech, "in itself, is no justification for

---

**3.** Analytically, we believe that an injunction of this limited kind is not in fact a prior restraint as that term is defined in Supreme Court case law. *Kingsley Books, Inc. v. Brown,* 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957); *Grosjean v. American Press Co.,* 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660 (1936); *Near v. Minnesota,* 283 U.S. 697, 51 S.Ct. 625 (1931). No injunction may issue under § 3011(a) until a court has found after a hearing that there has been a previous violation of § 3010. Such a finding necessarily includes a judicial determination that the materials sent constituted sexually oriented advertising as defined in the statute. More to the point, no defendant could be found to have violated the injunction until after he has transmitted the materials in question through the mails and those materials

have been judicially determined to constitute sexually oriented advertising. The possible *in terrorem* effect of a statutory or injunctive prohibition does not render it a prior restraint. *Cf. Kingsley Books v. Brown, supra.*

**4.** *Cf. Erznoznik v. City of Jacksonville,* 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975); *Bigelow v. Virginia,* 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975); *Martin v. Struthers,* 319 U.S. 141, 146, 63 S.Ct. 862, 87 L.Ed. 1313 (1954); *Murdock v. Commonwealth of Pennsylvania,* 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943); *Pent-R Books, supra,* 328 F.Supp. at 309; *Rowan v. Post Office Dept.,* 300 F.Supp. 1036, 1043 (C.D.Cal.1969) (Hufstedler, J., concurring), *aff'd,* 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970).

narrowing the protection of the expression secured by the First Amendment." *Ginzburg v. United States,* 383 U.S. 463, 474, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966).[5]

For these reasons, we find no great difficulty in accepting the Defendants' claim (and the government's concession) of the unconstitutionality of the statute's authorization of an (a)(1) injunction prohibiting mailing to people who have requested the advertising.

With respect to an injunction against mailing to persons who have not acted affirmatively either to put their names on the list or to request the advertising, we make a similar holding of unconstitutionality.

 The rights involved are those just mentioned, i. e., the mailer's right to communicate and the addressee's right to receive the mailing. Those rights are of such importance that the government has a very great burden to show a compelling interest for their curtailment by injunction. *Cf. McGowan v. State of Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). In our view, the government has failed to meet the burden as to this group of addressees.

 The mailer's "right to communicate" as recognized in *Rowan,* is not overcome in this context because the addressees have not asserted a countervailing right of privacy. As to an addressee's right to receive a mailing, we do not think it can constitutionally be conditioned upon the requirement that the addressee request the material in advance. We believe this follows from *Lamont,* wherein the Court struck down a requirement that certain mail should not be delivered unless the recipient had specifically asked for it.

 It is suggested that the statutory authorization of injunctions against mailing to persons who have taken no affirmative action of their own should be validated on an agency theory. This theory is that the government may assert, as their agent, the right of privacy of those persons who have not affirmatively asked for the material. The asserted agency arises from the government's belief that sexually oriented material would be offensive to all recipients except those who have specifically asked for it and the government is merely asserting their right not to receive it. We reject the suggestion. As we read the decisions of the Supreme Court in the First Amendment area, the government has no right to substitute its judgment for the judgment of the individual in deciding what materials he shall receive through the mails. Such censorship cannot be exercised for the individual as purported agent, as *parens patriae* or otherwise. We must always keep in mind that free speech and free communication is the essence of democracy and that, as Mr. Justice Holmes said, " . . . the use of the mails is almost as much a part of free speech as the right to use our tongues . . . ." *Milwaukee Pub. Co. v. Burleson,* 255 U.S. 407, 437, 65 L.Ed. 704 (1921) (dissenting opinion). And when the government can prohibit the people from receiving material through the mail which the government thinks should not be sent, and which the recipients have not asked to be protected from, the entire concept of free speech and free communication is dealt a devastating blow. We believe the words used by the Supreme Court in a different context in *Erznoznik, supra,* are applicable:

" . . . the Constitution does not permit government to decide which types of otherwise protected speech are sufficiently offensive to require protection for the unwilling writer or

---

**5.** We recognize that certain regulations of the time, place and manner of advertising, *qua* advertising and regardless of content thereof, may be valid under the police power. See *Valentine v. Chrestensen,* 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262 (1942). But the instant statute does not involve a regulation of advertising as such. It is based upon the content of the advertising, which we stress is not obscene, and authorizes a prohibition on the right to mail it and to receive it because of its content. *Cf. Erznoznik v. City of Jacksonville, supra.*

viewer." 422 U.S. at 210, 95 S.Ct. at 2273.

It should also be borne in mind that an injunction of the type here considered is not needed to afford a person whose name is not on the Postal Service list an opportunity to protect himself from seeing the material when it reaches his home. As above stated, the regulations under § 3010 require sexually oriented material to be so labeled "on the outer or inner envelope". Thus, a person who does not wish to see the material is forewarned and may chuck it in the wastebasket unopened. Further, once having received a single piece of sexually oriented advertising, he may have his name placed on the Postal Service list and be protected forever from receiving such material from the original or any other mailer.

The government argues in support of (a)(1) injunctions prohibiting mailing to others than persons on the list, that in appropriate cases such injunctions would be an effective deterrent and should be validated as such. The contention is that mailers would be much less likely to violate § 3010 by mailing sexually oriented materials to people on the list if they faced the threat of very severe restrictions on their business activities as a result. If that is the statutory purpose, the statute becomes punitive in the extreme. We recognize that Congress may have deemed sexually oriented advertising to be unpopular and generally objectionable. But it is impermissible overkill to subject a mailer thereof to the risk of being prohibited from mailing out any such material at all (in effect an end of his business) because he has mailed (even inadvertently) one or some pieces thereof to one or a few persons whose names are on the list. This has about it the unwelcome element of censorship. The criminal sanctions of the statute present an adequate remedy for willful violations of § 3010. The injunction which we have herein sanctioned against sending further sexually oriented mail to all persons on the list (and the contempt remedy thereunder) furnishes a further sanction for both willful and non-willful violations. The additional punishment of the (a)(1) injunction as applied to other groups of addressees is, in our view, unwarranted and unreasonably punitive and, therefore, invalid.

*The (a)(2) Injunction:*

39 U.S.C. § 3011(a)(2) authorizes an injunction which directs:

> "Any postmaster to whom sexually oriented advertisements originating with such defendant are tendered . . . to refuse to accept such advertisements for mailing."

As previously stated, administrative regulations (cited *supra*) direct sexually oriented advertising to be labeled as such either on the outside envelope or on an inside sealed envelope.

We hold that § 3011(a)(2) is constitutional insofar as it authorizes an injunction directing a postmaster to refuse for mailing sexually oriented advertising which is so labeled on the outside envelope thereof and is addressed to persons on the Postal Service list. We hold that the section is unconstitutional in all other respects.

Defendants argue that even the limited type of injunction which we uphold would be void as a prior restraint. We agree that when the postmaster may refuse material for mailing without the *Freedman* safeguards, the elements of a prior restraint may well exist. But that does not result in a condemnation of the limited type of injunction which we uphold. We believe that under *Rowan,* if there is any element of prior restraint involved in the limited type of injunction which we validate, such a prior restraint is not *per se* impermissible. *Cf. Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 558, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975). Where the mailer himself has said on the outside envelope that the advertising is sexually oriented, the only remaining determination left to the postmaster under the limited type of (a)(2) injunction we have approved, would be ministerial, i.

e., a determination of whether a given addressee's name and address has been on the Postal Service list for 30 days. The procedural safeguards enunciated in *Freedman, supra,* are designed to impose strict limits on administrative discretion as applied to First Amendment material. Here there is essentially no administrative discretion or administrative judgment involved in the postmaster's function.[6]

■ Beyond the statute's authorization of the limited injunction we have discussed, we believe § 3011(a)(2) is unconstitutional. If the mailer has not labeled the material as sexually oriented advertising, any injunction would require the postmaster to make a determination of the character of the material himself. Such an injunction, unaccompanied by the procedural safeguards enunciated by the Supreme Court in *Freedman, supra,* and the cases which have followed in its wake, would be an impermissible prior restraint. See particularly *Southeastern Promotions, Ltd. v. Conrad, supra.* Section 3011(a)(2) contains none of the required procedural safeguards.[7] If the advertising has been labeled by the mailer as sexually oriented but on an inner sealed envelope, such an injunction would require the postmaster to open all mail which he believes to have originated with the defendant to see if it in fact originated with him and to see further if the mail is of the proscribed character. Such administrative activity

seems to us "suspiciously like censorship", *Rowan, supra,* 397 U.S. at 735, 90 S.Ct. 1184, because it would set postmasters "astride the flow of mail", *Lamont, supra,* 381 U.S. at 306, 85 S.Ct. 1493. The Supreme Court has also spoken of the desirability under a free society "to punish the few who abuse rights of speech after they break the law [rather] than to throttle them . . . beforehand." *Southeastern Promotions, Ltd. v. Conrad, supra,* 420 U.S. at 559, 95 S.Ct. at 1246. We cannot validate such a statutory scheme.

■ It goes without saying that any (a)(2) injunction which would authorize the postmaster to turn back mailings addressed to persons other than those on the Postal Service list would be invalid under the principles we have enunciated, *supra,* as to (a)(1) injunctions. If the mailer cannot be enjoined from mailing sexually oriented advertising to such persons, *a fortiori,* the postmaster may not be authorized to refuse mailings addressed to such persons.

*The (a)(3) Injunction:*

■ Section 3011(a)(3) authorizes an injunction requiring the postmaster of defendant's post office to return all of defendant's incoming mail to the sender marked as being responses to sexually oriented advertising. Before the mail is returned, the defendant is given an opportunity to examine it and to obtain delivery of such of his mail as he can

---

6. While we have upheld a limited type of (a)(2) injunction as above stated, we hasten to add that if a whole batch of material labeled as sexually oriented advertising were held up by the Postmaster for any substantial length of time in order to determine if any of the addressees were persons whose names were on the list, the statute, as applied, then might well become unconstitutional as an unreasonable impediment to the transmission of the mails. We cannot anticipate and rule on every factual situation which may arise. We stress that a trial court in drawing such an injunction should require that the mail be examined with extreme promptness to segregate that which is addressed to persons on the list and order that the rest be forwarded on with the shortest possible delay.

7. The government argues that the *Freedman* procedural safeguards are contained in § 3011(a) because no prior restraint is imposed until after a judicial proceeding. We regard this argument as incorrect, based on too superficial a reading of the statute. The initial judicial proceeding provided by § 3011(a) adjudicates only the nature of the specific advertising materials that were the subject of the litigation, i. e., those materials already sent which constitute the violation of the command of § 3010. But the inescapable meaning of § 3011(a)(2) is that all sexually oriented advertising tendered by the mailer, now or in the future, may be restrained even though entirely different in content from that determined at the original proceeding to be sexually oriented.

show as being "clearly not connected with activity alleged to be in violation of Section 3010 . . .."

We hold § 3011(a)(3) to be invalid. Returning a defendant's incoming mail cannot be reasonably related to protecting the rights of unwilling addressees whose names appear on the Postal Service list. This type of injunction is punitive and invades the rights of the mailer and his customers previously discussed without any countervailing justification.

The government argues that (a)(3) injunctions should be validated on the authority of a number of judicial holdings validating a similar statutory return-to-sender provision in mail fraud situations. Section 3011(a)(3) is obviously modeled upon 39 U.S.C. § 3005, the present codification of a statutory scheme that dates back to 1872. (See 17 Stat. 322–23). Section 3005 and its predecessors deal with mail fraud schemes. Upon evidence satisfactory to the Postal Service that a person is conducting such a scheme, the Postal Service may issue an order directing postmasters to return to the sender letters addressed to such person. This statutory scheme was upheld initially against a constitutional challenge in *Public Clearing House v. Coyne,* 194 U.S. 497, 24 S.Ct. 789, 48 L.Ed. 1092 (1904). *Coyne* has been faithfully followed since. See, *e. g., Donaldson v. Read Magazine,* 333 U.S. 178, 68 S.Ct. 591, 92 L.Ed. 628 (1948); *cf. Outpost Development Corp. v. United States,* 369 F.Supp. 399 (C.D.Cal.1973), *aff'g mem.* 414 U.S. 1105, 94 S.Ct. 832, 38 L.Ed.2d 733 (1973); *Lynch v. Blount,* 330 F.Supp. 689 (S.D.N.Y.1971), *aff'g mem.* 404 U.S. 1007, 92 S.Ct. 673, 30 L.Ed.2d 656 (1972).

▮ While accepting without comment the holdings of these cases, we are satisfied that our case is not controlled by them. First, the manifest purpose of returning mail sent to a person engaged in a fraudulent scheme is "to protect people against fraud", and to deny the use of the mails "for perpetration of swindling schemes." *Donaldson, supra,* 333 U.S. at 190–91, 68 S.Ct. 591. The definition of sexually oriented advertising, in contrast, contains no element of fraud or trickery against which people need protecting.

▮ Moreover, unlike the fraudulent materials dealt with in § 3005, sexually oriented advertising is protected by the First Amendment, at least until it has been adjudicated to be obscene. Thus, where § 3005 advances an overriding governmental interest in preventing "swindling schemes," § 3011(a)(3) does not advance analogous governmental interests. *Cf. Lamont v. Postmaster General, supra; Rowan v. Post Office Department, supra.*

▮ More important, the Supreme Court's holding in *Rizzi, supra,* invalidating a return-to-sender statute in the context of obscenity, suggests that a different result is required as between statutes regulating mailings of fraudulent material and those regulating mailing of obscene material. The latter, unlike the former, requires postmasters to make discretionary judgments that under the First Amendment must be kept in check by the procedural safeguards of *Freedman.* See *Lynch v. Blount, supra.*[8]

*Separability:*

In our various holdings, *supra,* we have concluded that §§ 3011(a)(1) and 3011(a)(2) are valid in part (insofar as certain specified limited injunctions are concerned) and are invalid in other parts. In so doing, we have applied the old and

---

8. In abstracting the statute, *supra,* we mentioned the scope of § 3011(c) which authorizes injunctions *pendente lite.* The validity of *pendente lite* injunctions was not fully argued for us. So we refrain from any definitive holdings concerning § 3011(c). However, since the *pendente lite* injunctions which are authorized, include injunctions of the same types as are authorized in §§ 3011(a)(1) and 3011(a)(2), and even broader injunctions as to detaining mail than those authorized by § 3011(a)(3), it is evident that § 3011(c) involves most serious constitutional problems. Those problems are compounded because under § 3011(c), injunctions may issue on a mere showing of "probable cause" of statutory violation. *Cf. Blount v. Rizzi, supra,* 400 U.S. at 420, 91 S.Ct. 423.

well-established doctrine of separability. That doctrine was most clearly stated for the Court by Mr. Justice Brandeis as follows:

"A statute bad in part is not necessarily void in its entirety. Provisions within the legislative power may stand if separable from the bad. [citations omitted]. But a provision, inherently unobjectionable, cannot be deemed separable unless it appears both that, standing alone, legal effect can be given to it and that the legislature intended the provision to stand, in case others included in the act and held bad should fall." *Dorchy v. Kansas,* 264 U.S. 286, 289–90, 44 S.Ct. 323, 324, 68 L.Ed. 686 (1924). *Cf.* Stern, *Separability and Separability Clauses,* 61 Harv. L.Rev. 76 (1937).

 Given that § 3011 is the only means of redressing non-willful violations of § 3010, we believe Congress intended that any valid portion, or application, of § 3011 should stand alone in case other portions or applications thereof were held to be invalid. Also, since the invalid provisions and applications of § 3011 can be clearly and unambiguously delineated from the valid ones, we are not required to invalidate the entire statute as overbroad. *Cf.* Note, *The First Amendment Overbreadth Doctrine,* 83 Harv.L.Rev. 844 (1970).

*Judicial Discretion:*

 One further factor deserves brief mention. The instant statute is not saved from a determination of unconstitutionality because it only *authorizes* a court's grant of injunctive relief without *mandating* any such relief. In neither of the cases before us has a trial judge yet determined to grant any injunctive relief. And it must be admitted that each trial court would have the discretion under the statute to deny all of the various types of injunctions authoriz-

ed by the statute. This possibility does not excuse us from deciding the constitutional questions presented to us. In each case, the government is seeking all of the types of injunctive relief authorized by the statute. Moreover, in each case, the Defendant, by counterclaim, seeks a declaration of unconstitutionality and an injunction against the application of the statute. The pleadings thus supply the elements of an actual case or controversy. Defendants have stipulated that they have violated § 3010 and thus the question of what sanction can permissibly be imposed is ripe for decision. The constitutionality or unconstitutionality of the statute depends upon what the statute authorizes. The possibility that the full authorization might in some cases not be employed does not eliminate the constitutional questions presented.

## CONCLUSION

 This Opinion constitutes the Findings of Fact and Conclusions of Law of this three-judge court. Under it, there remains a question in each case as to whether the limited type of injunction herein approved should, in the trial court's discretion, issue. The order consolidating the two cases is terminated and the cases are now ordered separated for trial. Each case is remanded to its respective one-judge court for trial and such other proceedings as may be consistent with this Opinion.

Counsel for the Defendants shall submit within fourteen days hereof a proposed declaratory judgment which will declare the statute to be constitutional in the two respects specified herein and unconstitutional in other respects. Counsel for the government shall submit any objections to the form of the judgment within seven days after the same is served. Said judgment shall specify that it is only a partial judgment in each case.