291 So.2d 761

**Chester McKINNEY**

**v.**

**CITY OF BIRMINGHAM.**

**Nos. 6 Div. 572, 573.**

**Kile STEPHENS**

**v.**

**CITY OF BIRMINGHAM.**

**Nos. 6 Div. 574–576.**

**George HARLOW**

**v.**

**CITY OF BIRMINGHAM.**

**No. 6 Div. 578.**

**Thomas D. McGARY**

**v.**

**CITY OF BIRMINGHAM.**

**Nos. 6 Div. 579–581, 583, 584.**

Court of Criminal Appeals of Alabama.

Jan. 15, 1974.

Ferris S. Ritchey, Jr., Birmingham, Robert Eugene Smith, Baltimore, Md., D. Freeman Hutton, Atlanta, Ga., for appellants.

L. H. Warren, Herbert Jenkins, Jr. and William C. Walker, Birmingham, for appellee, City of Birmingham.

TYSON, Judge.

These eleven cases are here consolidated on appeal, as the complaints in each case are identical except as to the name of the defendant and the date of the offense. On each of the dates indicated below, each of the appellants was either the manager or an employee of the MTM Corporation, which owned and operated the Pussycat Adult Theatre, located at 7610 First Avenue, North, in the City of Birmingham, Alabama.

On the dates indicated, Detective J. C. Wilson, usually in the company of one or more Birmingham police officers, entered the theatre in question and placed the party indicated under arrest for operating a movie theatre without a permit from the city:

| Date | | | Party Arrested |
|------|--|--|----------------|
| September | 4, | 1971 ....... | Chester McKinney |
| September | 12, | 1971 ....... | Chester McKinney |
| April | 1, | 1971 ....... | Kile Stephens |
| April | 5, | 1971 ....... | Kile Stephens |
| April | 14, | 1971 ....... | Kile Stephens |
| August | 26, | 1971 ....... | George Harlow |
| September | 21, | 1971 ....... | Thomas D. McGary |
| September | 26, | 1971 ....... | Thomas D. McGary |
| September | 23, | 1971 ....... | Thomas D. McGary |
| August | 17, | 1971 ....... | Thomas D. McGary |
| August | 26, | 1971 ....... | Thomas D. McGary |

On each of these dates, the party arrested was either operating or participating in the operation of the theatre where so-called X-rated adult type motion pictures were being shown to adult patrons. The records here submitted on appeal indicate that none, of the movies being shown at the theatre on the dates indicated, was ever determined to be legally obscene. In argument the City of Birmingham conceded that no other theatre had been refused a permit under the ordinance here challenged. Sections 6, 7, and 12 of the ordinance in question are as follows:

"Section 6. *Notice of Hearing.* When Application is filed for a new permit under this Ordinance, the Chief of Police shall fix a time and place for a public hearing thereon within thirty (30) days from the date of filing of said Application, and so notify Applicant. Notice of said public hearing shall be given by not less than ten (10) days publication of such notice in a daily newspaper of general circulation in the City. At said hearing, the Chief of Police shall consider any relevant evidence offered by the Applicant, or any other person, which is relevant to the consideration of said Application.

"Section 7. *Issuance of Permit.* The Chief of Police shall issue a permit within fourteen (14) days following a hearing as provided in Section 6 hereof, based upon his investigation and subsequent to the public hearing provided for above, if he finds:

(a) That the operation proposed by the Applicant, if permitted, would comply with all applicable laws including but not limited to the City's Building, Health, Zoning and Fire Ordinances.

(b) That the Applicant and any other person who will be directly engaged in the management and operation of the theatre has not been convicted in a Court of competent jurisdiction of:

(i) An offense involving the presentation, exhibition or performance of an obscene production, motion picture, play or act within three (3) years of the effective date of this Ordinance;

(ii) An offense involving the use of force and violence upon the person of another that amounts to a felony, or if committed without the State of Alabama would amount to a felony if committed within the State of Alabama;

(iii) An offense involving the use of force and violence upon the person of another provided that such person committed three separate offenses within the past five (5) years;

(iv) An offense involving sexual misconduct with children;

(v) An offense involving sexual misconduct committed within the premises of a theatre on a stage or as part of the entertainment;

(vi) An offense involving the presentation, exhibition or performance of an obscene production, motion picture, play or act at any time subsequent to the effective date of this Ordinance; or

(vii) An offense involving the exhibition, distribution, sale or offer for sale of any obscene matter as defined by any Ordinance of the City of Birmingham or law of the State of Alabama.

(c) That the Applicant has not knowingly made any false, misleading, or fraudulent statements of fact in the permit, application, or any other document required by the Chief of Police in conjunction therewith.'

.　　.　　.　　.　　.　　.

"Section 12. *Existing Theatres.* Any person engaged in the operation of a

threatre in the City on the 30th day of March, 1971 shall have a grace period of thirty (30) days in which to apply for a permit for such theatre as required by this Ordinance, and the operation of such theatre shall not be in violation of this Ordinance until and unless the Chief of Police denies such Application."

Each of these cases was submitted to the trial court wherein the arrests indicated were challenged on the basis of being a violation of the First and Fourteenth Amendments to the United States Constitution, as being an unconstitutional prior restraint on freedom of expression. The stipulation of facts submitted below, in pertinent part, reads as follows:

"3. That City of Birmingham licenses expire on December 31, but may be purchased at any time prior to April 1 following without penalty; that said theatre did have a business license until December 31, 1970, when it expired; that prior to April 1, 1971, a renewal of the business license for Pussycat Adult Theatre was sought and refused pending an Application for Theatre Permit and granting thereof by Chief of Police Jamie Moore.

"4. That Section 71–27 of the 1964 General Code of the City of Birmingham was adopted by the Birmingham City Council on the 20th day of March, 1971, and later amended on the 22nd day of June, 1971, copies of which are attached hereto and by stipulation made a part of the evidence in this case; that thereafter, on the 2nd day of July, 1971, the publication notice required by said Ordinance was made and on July 2, 1971, became the effective date of the Ordinance as amended; that thereafter, permit application forms were prepared by the City of Birmingham for the use of applicants seeking a permit under the new Ordinance; that the application forms were available in May, 1971; that an application for Theatre Permit, signed by Chester McKinney, for MTM Corpora-

tion, was made during May, 1971; that the application for Theatre Permit filed by the Defendant was in accordance with the requirements of the Ordinance.

"5. That after a hearing held in accordance with the Ordinance on or about July 29, 1971, the City of Birmingham's Chief of Police, Jamie Moore, denied the permit, and said denial was based primarily, if not wholly, on information that Chester McKinney, the manager thereof, and others had been arrested and convicted in connection with showing of allegedly obscene movies.

"6. That all of said convictions were pending appeal to the Jefferson County Circuit Court or to the Alabama Court of Criminal Appeals, and that in none of these cases had the Defendants' appellate remedies been exhausted.

"7. That the exterior of the Pussycat Adult Theatre clearly and distinctly displays, 'Adults Only' signs; that there are no photographs or other advertisement of any form suggesting the actual motion picture film being exhibited in the theatre except the title thereof; that on the door leading into the theatre there is a sign which clearly states, 'If parts of the nude anatomy offend you, do not enter' " that the theatre requires proof of age to 18 years prior to admittance."

The trial court, after hearing, did determine that the individuals in question did operate a theatre without a permit, as defined in the applicable sections of Ordinance No. 71–27, as amended, of the City of Birmingham, Alabama, as shown above, and that such ordinance was deemed constitutional, as providing adequate standards and prohibiting the unbridled discretion on the part of the public official administering same in denying the permits to operate the theatre in question. Each of the defendants was found guilty and fined $100.00 and costs. In addition, each was sentenced to perform hard labor for the City of Birmingham for a specified period.

## I

In Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098, the United States Supreme Court stated:

" . . . [W]e conclude that expression by means of motion pictures is included within the free speech and free press guaranty of the First and Fourteenth Amendments. . . . "

Further from Burstyn v. Wilson, supra:

" . ; . New York requires that permission to communicate ideas be obtained in advance from state officials who judge the content of the words and pictures sought to be communicated. This Court recognized many years ago that such a previous restraint is a form of infringement upon freedom of expression to be especially condemned. Near v. State of Minnesota ex rel. Olson, 1931, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357. . . . "

In dealing with the problem of a proper procedure to provide adequate safeguards against undue inhibition of protected expression the United States Supreme Court in Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 stated:

"Although the Court has said that motion pictures are not 'necessarily subject to the precise rules governing any other particular method of expression,' Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 503, 72 S.Ct. 777, 781, 96 L.Ed. 1098, it is as true here as of other forms of expression that '[a]ny system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity.' Bantam Books, Inc. v. Sullivan, supra, 372 U.S. 58 at 70, 83 S.Ct. 631 at 639, 9 L. Ed.2d 584. ' * * * [U]nder the Fourteenth Amendment, a State is not free to adopt whatever procedures it pleases for dealing with obscenity * * * without regard to the possible consequences for constitutionally protected speech.' Marcus v. Search Warrant,

367 U.S. 717, 731, 81 S.Ct. 1708, 1716, 6 L.Ed.2d 1127. The administration of a censorship system for motion pictures presents peculiar dangers to constitutionally protected speech. Unlike a prosecution for obscenity, a censorship proceeding puts the initial burden on the exhibitor or distributor. Because the censor's business is to censor, there inheres the danger that he may well be less responsive than a court—part of an independent branch of government—to the constitutionally protected interests in free expression. And if it is made unduly onerous, by reason of delay or otherwise, to seek judicial review, the censor's determination may in practice be final.

"Applying the settled rule of our cases, we hold that a noncriminal process which requires the prior submission of a film to a censor avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system. First, the burden of proving that the film is unprotected expression must rest on the censor. As we said in Speiser v. Randall, 357 U.S. 513, 526, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460, 'Where the transcendent value of speech is involved, due process certainly requires * * * that the State bear the burden of persuasion to show that the appellants engaged in criminal speech.' Second, while the State may require advance submission of all films, in order to proceed effectively to bar all showings of unprotected films, the requirement cannot be administered in a manner which would lend an effect of finality to the censor's determination whether a film constitutes protected expression. The teaching of our cases is that, because only a judicial determination in an adversary proceeding ensures the necessary sensitivity to freedom of expression, only a procedure requiring a judicial determination suffices to impose a valid final restraint. See Bantam Books, Inc. v. Sullivan, supra; A Quantity of Books v. State of Kansas, 378 U.

S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809; Marcus v. Search Warrant, supra; Manual Enterprises, Inc. v. Day, 370 U.S. 478, 518–519, 82 S.Ct. 1432, 1453–1454, 8 L.Ed.2d 639. To this end, the exhibitor must be assured, by statute or authoritative judicial construction, that the censor will, within a specified brief period, either issue a license or go to court to restrain showing the film. Any restraint imposed in advance of a final judicial determination on the merits must similarly be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolution. Moreover, we are well aware that, even after expiration of a temporary restraint, an administrative refusal to license, signifying the censor's view that the film is unprotected, may have a discouraging effect on the exhibitor. See Bantam Books, Inc. v. Sullivan, supra. Therefore, the procedure must also assure a prompt final judicial decision, to minimize the deterrent effect of an interim and possibly erroneous denial of a license.

"Without these safeguards, it may prove too burdensome to seek review of the censor's determination. Particularly in the case of motion pictures, it may take very little to deter exhibition in a given locality. The exhibitor's stake in any one picture may be insufficient to warrant a protracted and onerous course of litigation. The distributor, on the other hand, may be equally unwilling to accept the burdens and delays of litigation in a particular area when, without such difficulties, he can freely exhibit his film in most of the rest of the country; for we are told that only four States and a handful of municipalities have active censorship laws.

"It is readily apparent that the Maryland procedural scheme does not satisfy these criteria. First, once the censor disapproves the film, the exhibitor must assume the burden of instituting judicial proceedings and of persuading the courts that the film is protected expression. Second, once the Board has acted against a film, exhibition is prohibited pending judicial review, however, protracted. Under the statute, appellant could have been convicted if he had shown the film after unsuccessfully seeking a license, even though no court had ever ruled on the obscenity of the film. Third, it is abundantly clear that the Maryland statute provides no assurance of prompt judicial determination. . . . "

As observed in Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584, the court stated:

" . . . Our insistence that regulations of obscenity scrupulously embody the most rigorous procedural safeguards, Smith v. People of the State of California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205; Marcus v. Search Warrant, supra, is therefore but a special instance of the larger principle that the freedoms of expression must be ringed about with adequate bulwarks." Cases cited.

In Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542, the Supreme Court, in dealing with the matter of the possession by an individual of allegedly obscene material in one's home, indicated:

" . . . Our whole constitutional heritage rebels at the thought of giving government the power to control men's minds . . . . "

Further from *Stanley:*

" . . . Given the present state of knowledge, the State may no more prohibit mere possession of obscene matter on the ground that it may lead to antisocial conduct than it may prohibit possession of chemistry books on the ground that they may lead to the manufacture of homemade spirits."

In Blount v. Rizzi, 400 U.S. 410, 91 S.Ct. 423, 27 L.Ed.2d 498, the court reaffirmed

its holding in Freedman v. Maryland, supra, with the following observation:

" . . . We held that to avoid constitutional infirmity a scheme of administrative censorship must: place the burdens of initiating judicial review and of proving that the material is unprotected expression on the censor; require 'prompt judicial review'—a final judicial determination on the merits within a specified, brief period—to prevent the administrative decision of the censor from achieving an effect of finality; and limit to preservation of the status quo for the shortest, fixed period compatible with sound judicial resolution, any restraint imposed in advance of the final judicial determination. . . ."

See also Teitel Film Corp. v. Cusack, 390 U.S. 139, 88 S.Ct. 754, 19 L.Ed.2d 966; and Interstate Circuit, Inc. v. Dallas, 390 U.S. 676, 88 S.Ct. 1298, 20 L.Ed.2d 225.

Only this past summer in Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446, the court observed:

" . . . Here, Georgia imposed no restraint on the exhibition of the films involved in this case until after a full adversary proceeding and a final judicial determination by the Georgia Supreme Court that the materials were constitutionally unprotected. Thus, the standards [Cases cited above] were met."

After carefully reviewing the ordinance of the City of Birmingham, here in question, it is clear that such is an unconstitutional prior restraint on freedom of expression, as defined by the cases herein cited. The ordinance in question fails to provide even the most minimum constitutional safeguards, such as (1) prompt judicial review on the merits of the administrative determination by the censor that the material is unprotected expression, and (2) to place the burden of initiating judicial review and proving that the material in question is unprotected expression on the cen-

sor, and (3) to limit the preservation of the status quo to the shortest fixed period compatible with sound judicial resolution of any restraint imposed in advance of the final judicial determination. See also Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745.

Because of the deficiencies hereinabove set forth, Sections 6 and 12 of the ordinance in question are hereby declared unconstitutional. Because of this holding, we pretermit consideration of whether or not the provisions of Section 7 of the ordinance in question will pass constitutional scrutiny.

Each of the appellants had standing to question the ordinance. Shuttlesworth v. Birmingham, 43 Ala.App. 68, 180 So.2d 114.

Each of the judgments of the Circuit Court below in these cases is therefore due to be reversed, and each of the appellants is due to be and is hereby discharged sine die.

Reversed and rendered.

All the Judges concur.